In the Matter of ARTHUR V. SELIG, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, June 26, 1969.

214

*John G. Bonomi* of counsel (*Michael Franck* and *John A. Astorina* with him on the brief), for petitioner.

*Frederick J. Waters* for respondent.

*Per Curiam.* Respondent was admitted to practice in the First Department on November 13, 1933. Hearings have been had before a Referee consequent on charges filed. The charges arose out of a New York County Grand Jury investigation. In testimony before the Grand Jury, respondent admitted that on five separate occasions he paid sums of $2,500, $5,000, $7,500, $10,000 and $10,000, respectively, to a law office associate of Martin C. Epstein, then Chairman of the New York State Liquor Authority. These payments were made on behalf of clients to procure favorable disposition of their matters before the Authority. When first summoned before the Grand Jury, respondent refused to testify and was cited for and adjudged in contempt. He then asked permission to purge himself of the contempt charge and testify. He now claims his Grand Jury testimony, admitted in evidence before the Referee, was forced and compelled and is incompetent and inadmissible in this proceeding against him.

The applicable authorities fail to sustain respondent's position. *Malloy* v. *Hogan* (378 U. S. 1) held the Fourteenth Amendment of the United States Constitution applicable to the States included the privileges and immunities granted by the Fifth Amendment. Thereafter, *Spevack* v. *Klein* (385 U. S. 511) was decided on January 16, 1967. This case held that an attorney may not be disciplined solely by reason of the assertion of his priv-

ilege under the Fifth Amendment. *Garrity* v. *New Jersey* (385 U. S. 493) decided the same day, is to the effect that testimony coerced by a statutory provision for loss of employment resulting from the claim of the Fifth Amendment privilege may not be used against the affiant in a criminal proceeding. The said holdings, however, do not proscribe the use of compelled testimony resulting from the grant of immunity in a proceeding other than a criminal action or proceeding. Moreover, it has been specifically held that such evidence is admissible in a disciplinary proceeding. (*Matter of Zuckerman,* 20 N Y 2d 430, 438, cert. den. 390 U. S. 925; *Matter of Ungar,* 27 A D 2d 925, mot. for lv. to app. den. 20 N Y 2d 642, cert. den. 389 U. S. 1007; *Matter of Klebanoff,* 21 N Y 2d 920.)

By stipulation dated June 11, 1968, entered into between the District Attorney of New York County, the attorney for petitioner and the attorney for respondent, it was stipulated as follows: '' That without the evidence obtained through, and the leads obtained from conversations overheard in the offices of Albert E. Klapper by the eavesdropping devices placed as described in the first paragraph, the District Attorney was not aware of the identity of the respondent, had no information upon which to proceed to question the respondent before the Grand Jury, or had no basis with which to prosecute the respondent herein for any of the crimes under investigation by the District Attorney as aforesaid and that all of the evidence and the leads obtained concerning which the respondent herein was questioned by the Chief Assistant District Attorney and others of his staff when respondent appeared and testified as a witness before the fourth December 1962 Grand Jury on June 10th and 11th, 1963 in the Borough of Manhattan, City of New York, as well as the questions previously put to respondent by the Chief Assistant District Attorney before the same Grand Jury and before Mr. Justice Culkin, Justice of the Supreme Court, on June 5, 1963 and June 6, 1963 were so obtained from such eavesdropping activities on the part of the District Attorney and his agents and that all the evidence and all the leads were derived therefrom.''

The fact that the leads enabling the District Attorney to elicit respondent's said Grand Jury testimony in June, 1963 may have derived from '' bugs '' during 1962 does not avail respondent, even if it be assumed that the bugging was illegal. Respondent's position on this issue is grounded on *Berger* v. *New York* (388 U. S. 41) decided June 12, 1967. The Court of Appeals held that *Berger,* insofar as it declared unconstitutional the bugging statute, is not to be applied retroactively (*People* v.

*Kaiser,* 21 N Y 2d 86). Hence, respondent's argument that the 1962 "bugs" are illegal is without merit.

The stipulation, it may be noted, is limited to the eavesdropping devices in the offices of Albert E. Klapper. The record shows that respondent was not a party to any of the conversations overheard in the offices of Albert Klapper. The objection on constitutional grounds to the use of intercepted conversations obtained through eavesdropping devices is personal and limited to a party to the conversation or whose premises are involved. (*Alderman* v. *United States,* 394 U. S. 165.) Respondent did not occupy the offices of Albert E. Klapper and was not a party to any of the conversations resulting from the eavesdropping devices in Klapper's office.

Respondent also contends that the payments made were extorted from him and were not bribes. The proof clearly shows that respondent acted as the intermediary in the payment of some $35,000 on five different occasions to a lawyer who was a law office associate of a State official, the then Chairman of the State Liquor Authority, to induce favorable disposition of matters before the Authority. His participation in the unlawful payments reflected in the charges is not that of an innocent man forced to submit to extortion. The evidence is clear that respondent was a willing participant. There would appear to be no extenuating circumstances.

*Matter of Thaler* (30 A D 2d 166) relied on by the minority is distinguishable. There the incidents resulted from suggestions of a Judge of the Court of Claims, respondent's employer. Thaler was in fear of loss of employment at a time when he was under pressure in family and financial matters. The Referee there reported (p. 168): " I believe respondent is contrite and has been so chastened by this proceeding that, if permitted to continue his chosen profession, there is no danger that he will offend again."

Here, respondent did not testify in the disciplinary proceeding and, therefore, the Referee was unable to and did not make any recommendation. The posture of one imposed upon assumed by respondent is unsupported by his testimony under oath and untested by cross-examination. The overtures here emanated from respondent. In addition, referrals to respondent were made by Klapper. In short, respondent was a willing participant motivated solely by monetary gain.

The report of the Referee is confirmed and respondent should be disbarred. (*Matter of Farrell,* 27 A D 2d 61, mot. for lv. to app. den. 20 N Y 2d 861.)

CAPOZZOLI, J. (dissenting in part). I vote to confirm the report of the Referee, but am not in accord with the majority insofar as the matter of discipline is concerned. I feel that this case cannot be distinguished from *Matter of Thaler* (30 A D 2d 166) and, therefore, a similar discipline of three years' suspension should be imposed. Paraphrasing the Aristotelian admonition, quoted by my distinguished colleague, Mr. Justice McNALLY, in his dissent in *Matter of O'Doherty* (14 A D 2d 4, 12), there can be no greater injustice than to treat equal things unequally.

Accordingly, I dissent in part, as indicated herein.

STEVENS, P. J., EAGER and McNALLY, JJ., concur in *Per Curiam* opinion; CAPOZZOLI, J., dissents in part in opinion in which NUNEZ, J., concurs.

Respondent disbarred, effective July 28, 1969.