**In the Matter of Robert G. MANN.**

**No. 1177S799.**

Supreme Court of Indiana.

Feb. 22, 1979.

Rehearing Denied April 17, 1979.

Forrest B. Bowman, Jr., Indianapolis, for respondent.

Sheldon A. Breskow, Indiana Supreme Court Disciplinary Com'n, Indianapolis, for Supreme Court Disciplinary Comn.

PER CURIAM.

This cause is now before this Court on a Verified Complaint filed by the Disciplinary Commission of the Supreme Court pursuant to Admission and Discipline Rule 23, Section 12. As provided for by Admission and Discipline Rule 23, a Hearing Officer was appointed. The cause was heard and the Hearing Officer has filed his findings of fact and conclusions of law. The Respondent has petitioned this Court for review of the findings and conclusions and both parties have submitted legal briefs relative to the issues now before this Court.

Under the Verified Complaint Respondent is charged with transmitting a sum of money from his client in a criminal matter to one of the arresting officers for the purpose of improperly influencing the outcome of his client's criminal prosecution. More specifically, the Respondent is charged with counselling and assisting his client in fraudulent and illegal acts, with engaging in illegal conduct and with engaging in conduct contrary to a Disciplinary Rule in violation of Disciplinary Rules 7–102(A)(7) and (8). The Respondent, additionally, is charged with stating or implying that he was able to improperly influence a public official, violating a Disciplinary Rule, circumventing a Disciplinary Rule, engaging in illegal conduct involving moral turpitude, engaging in conduct involving dishonesty and deceit, engaging in conduct prejudicial to the administration of justice and engaging in conduct which adversely reflects in his fitness to practice law in viola-

tion of Disciplinary Rules 9–101(C) and 1–102(A)(1), (2), (3), (4), (5) and (6) of the *Code of Professional Responsibility.*

In his Petition for Review the Respondent raises an issue which goes to the core of this case and must be resolved at the outset, to-wit: the use in a disciplinary proceeding of testimony given by the Respondent in a criminal proceeding under a grant of immunity.

The record in this case establishes that the Respondent testified in a criminal case tried in Marion Criminal Court, Division 4, such testimony being given under a grant of immunity pursuant to the terms of I.C. 35–6–3–1, which provides as follows:

> 35–6–3–1 [9–1601a]. Compelling incriminating testimony—Immunity from prosecution—Exceptions.—Any witness, in any criminal proceeding, before a court or grand jury, who refuses to answer any question and/or produce any evidence of any kind on the ground that he may be incriminated thereby, may be ordered by the court to answer any question and/or produce any evidence upon a written request by the prosecuting attorney: Provided, That the witness shall be provided with timely notice and a separate hearing on the merits of the order. Unless the court finds that the issuance of the order would be clearly contrary to public interest, the witness shall comply with the order of the court. If, but for this section the witness would have been privileged to withhold the answer given or the evidence produced, he shall not be prosecuted or subjected to penalty or forfeiture for or on account of any answer given or evidence produced: Provided, further, That such immunity shall not be allowed in the case of any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accordance with the order of the court. [Acts 1969, ch. 153, Sec. 1, p. 317.]

The testimony given under such grant has been used by the Disciplinary Commission throughout the entire disciplinary process and is crucial to a finding of misconduct.

The Respondent challenges the use of this immunized testimony asserting that such violated the terms of the Criminal Court Order granting the immunity and violated I.C. 35–6–3–1 in that a disciplinary sanction would constitute a penalty or. forfeiture. This issue is one of first impression for this Court.

The argument of the Respondent fails to recognize the distinction in the law between a criminal proceeding and a disciplinary action. In some instances similar considerations may apply, but these two bodies of law are different in origin and are not parallel in all particulars.

■■■ Under the Constitution of the State of Indiana, this Court is given exclusive jurisdiction relating to the disbarment or discipline of attorneys. Ind.Const., Art. 7, Sec. 4. Thus, it is this Court's constitutional responsibility to preserve the integrity of the legal profession and safeguard the public from those who do not meet acceptable standards of professional behavior. This Court has adopted rules of conduct and rules of procedure to effectuate this constitutional mandate.

Standards of criminal conduct are legislative in origin. The legislative branch of government, within constitutional parameters, characterizes those acts which are deemed by society to be criminal and can delineate those circumstances which would exempt an individual from the application of a criminal sanction. Immunized testimony granted pursuant to I.C. 35–6–3–1 is one such exemption under the criminal law.

This Court, on several occasions, has noted that the procedures and practices relating to professional behavior by a member of the Bar of this State exist independent of a criminal proceeding, even if the alleged professional impropriety is criminal conduct. See, *In re Crumpacker* (1978) Ind., 383 N.E.2d 36; *In re Wireman* (1977) Ind., 367 N.E.2d 1368. This distinction results from the difference in origin of the two types of proceedings.

With the above noted distinction in mind, we now conclude that immunity granted under I.C. 35–6–3–1 has no application in an attorney disciplinary proceeding. It is the exclusive province of this Court to regulate professional legal activity. It is clear to us that the intent of the Legislature in enacting this statute was to provide for immunity in criminal matters; the Legislature's use of the term "penalty and forfeiture" was not intended to touch on matters of attorney discipline. To hold otherwise, would suggest an unconstitutional invasion into this Court's constitutional authority and would allow the unreasonable consequence of placing the power to grant immunity in a local prosecutor and court which might vitiate the constitutional mandate of this Court in disciplinary matters. We cannot give such unreasonable interpretation to this statute. *Pryor v. State,* (1973) 260 Ind. 408, 296 N.E.2d 125; *Moore v. State,* (1972) 257 Ind. 584, 276 N.E.2d 840; *In re The Adoption of Jackson, et al. v. Barnhill,* (1972) 257 Ind. 588, 277 N.E.2d 162.

We are not alone in this position. Several other jurisdictions have similarly found that testimony given under a grant of immunity may be used in subsequent disbarment proceedings. *In re Schwarz,* (1972) 51 Ill.2d 334, 282 N.E.2d 689, cert. den. 409 U.S. 1047, 93 S.Ct. 527, 34 L.Ed.2d 499, reh. den. 410 U.S. 917, 93 S.Ct. 959, 35 L.Ed.2d 281; *In re Selig,* (1969) 32 App.Div.2d 213, 302 N.Y.S.2d 94; *Committee on Legal Ethics of West Virginia State Bar v. Graziani,* (1973 W.Va.) 200 S.E.2d 353, 62 A.L.R.3d 1138, cert. den. 416 U.S. 995, 40 L.Ed.2d 774, 94 S.Ct. 2410; *In re Daley,* (1977) 549 F.2d 469; *Anonymous Attorneys v. Bar Association of Erie County,* (1977) 41 N.Y.2d 506, 393 N.Y.S.2d 961, 362 N.E.2d 592. See also 62 A.L.R.3d 1145.

■■ The Respondent also argues that the Hearing Officer erroneously denied in part a Motion to Discover. This Court has previously held that discovery is not a matter of right in a disciplinary proceeding. *In re Wireman,* Supra; *In re Murray,* (1977) Ind., 362 N.E.2d 128. Admission and Discipline Rule 23, Section 14(b) authorizes discovery as a matter of discretion. The argument raised by the Respondent does not indicate

an abuse of this discretion by the Hearing Officer.

■ Respondent additionally argues in his Petition for Review that the Hearing Officer should have granted Respondent's Motion for a Bifurcated Hearing on the issue of immunity, asserting in such argument that the question of immunity should have been resolved so that the Respondent could decide whether or not to give evidence in mitigation. While the Respondent was forced to make a decision as to how he was going to proceed in this matter, this requirement to decide is no different than that confronting any litigant in charting a defense to an allegation. We do not believe that the decision was of such magnitude as to require an independent consideration of this issue. The Hearing Officer correctly ruled that a bifurcated hearing was not in order and this Court now adopts such ruling.

■ The remaining issues raised in the Petition for Review relate to the findings submitted by the Hearing Officer. We have reviewed all matters submitted in this cause and now adopt and accept as our own these findings. Accordingly, this Court now finds that the Respondent was retained by Israel Jiles ("Jiles") in May of 1973 to represent him in the defense of a criminal case, Cause No. CR 73–311A, Marion County Criminal Court, Division I. Jiles paid the Respondent a fee for said representation. Jiles was charged by Information with violating the Indiana Dangerous Drug Act, to-wit: possession of marijuana in a quantity over 25 grams. If convicted of the above-mentioned felony charge, defendant Jiles would have received a one to ten year determinate sentence.

The arresting officers in the Jiles case were Indianapolis Police Detectives, J. C. Crawford and John Sims. During the course of representing Jiles, the Respondent had conversations with Detective Sims concerning the case and at one such conversation between the Respondent and Sims, it was agreed between Sims and the Respondent that the Respondent pay three hundred dollars ($300) in return for the offi-

cer's effort to cause the prosecution to reduce the charge against Jiles, so that Jiles could plead guilty to the crime of possession of less than 25 grams of marijuana, then a misdemeanor in this State.

Thereafter, the Respondent informed Jiles of his conversation with Sims including the proposed payment of three hundred ($300) to Sims to influence improperly the prosecution. Jiles borrowed the money and gave the Respondent three hundred dollars ($300) which both, the Respondent and Jiles, understood would be paid to Officer Sims to get the charges reduced from a felony to a misdemeanor.

On October 25, 1973, Jiles was allowed to plead guilty to the misdemeanor charge of possession of marijuana under 25 grams with no recommendation by the State as to the penalty to be imposed by the Court. On November 21, 1973, Jiles was sentenced to 30 days in the Marion County Jail with 17 days suspended and credit for 3 days in jail, leaving a 10 day net executed sentence. After the disposition of the Jiles case, the Respondent met with Officer Sims on the fifth floor of the City-County Building, Indianapolis, Indiana, and gave Sims the three hundred dollars ($300) he had received from his client, Jiles.

The above findings of fact establish that the Respondent knowingly transmitted money from his client, Jiles, to Officer Sims for the specific purpose of influencing the Jiles prosecution. In so doing, the Respondent assisted his client, Jiles, and was himself involved, in conduct which Respondent knew was not only highly improper but also illegal, in violation of Disciplinary Rules 7–102(A)(7) and (8). Respondent's conduct also violated Disciplinary Rule 9–101(C) as charged in that he stated or implied to Jiles that the Respondent would or might be able to influence Sims, a public official, on obviously irrelevant and clearly improper grounds. Furthermore, the Respondent violated disciplinary rules, engaged in illegal conduct involving moral turpitude, engaged in conduct involving dishonesty and deceit, engaged in conduct that was prejudicial to the administration of justice and engaged

in conduct that adversely reflected on his fitness to practice law, in violation of Disciplinary Rules 1–102(A)(1), (3), (4), (5) and (6) of the *Code of Professional Responsibility*.

In that we have found professional misconduct, this Court must now impose an appropriate disciplinary sanction. Throughout the entire proceeding, the Respondent has argued that he was the victim of extortion and became involved in circumstances beyond his control. The Respondent argues that he paid the money to get truthful testimony from the arresting officers.

This Court cannot accept the Respondent's interpretation of the evidence. He was, if not the moving party, an active and willing participant in a highly unethical and illegal scheme. The Respondent was in a position to advise his client of the course of action presented by the arresting officers and with full knowledge of the consequences the Respondent did pay three hundred dollars ($300) to Officer Sims in order to influence the outcome of his client's prosecution. Respondent's conduct in this matter demonstrated total disregard for the ethical standards to which all attorneys are held and for the very laws of this State the Respondent was sworn to uphold.

Under the *Code of Professional Responsibility* an attorney is charged with defending and advancing the interests of his clients within the framework of our legal system. It should be abundantly clear that an attorney cannot resort to illegal means in order to obtain a favorable disposition for his client. The slightest indication of an attorney's participation in influence-buying activities is a negative and shameful reflection upon the entire legal profession, which this Court will not tolerate.

After considering all matters which have been presented in this cause, this Court is forced to conclude that the strongest sanction available must be imposed. Therefore, by virtue of the violations found herein, it is ordered that Respondent be and he is hereby disbarred as an attorney in the State of Indiana.

Costs of these proceedings are assessed against the Respondent.

HUNTER, J., concurs in result.