**David E. SCHALK, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 53A01–1005–CR–210.

Court of Appeals of Indiana.

Feb. 28, 2011.

David E. Schalk, Bloomington, IN, Appellant pro se.

Gregory F. Zoeller, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

David E. Schalk appeals his conviction for Attempted Possession of Marijuana, as a Class A misdemeanor, following a bench trial. Schalk, an attorney, arranged a drug buy with a State witness. His ostensible purpose was to prove that the witness, a confidential informant, was actively dealing drugs and, thus, to discredit the witness who was scheduled to testify against his client at trial. Schalk contends that his conduct did not constitute a criminal offense because he was acting only in the defense of his client, that he did not intend to take possession of the drugs but only to deliver the drugs to law enforcement or the court for use at his client's trial, and, further, that his conduct was no different than that of prosecutors, police officers and confidential informants when they plan and execute a controlled drug buy. Schalk asserts numerous grounds for error with a common theme, namely, that his conduct was lawful and that the evidence was insufficient to support his conviction.

We affirm.

### FACTS AND PROCEDURAL HISTORY

In June 2007, Schalk was representing Chad Pemberton, who had been charged with dealing in methamphetamine, as a Class A felony. Pemberton's charge stemmed from a sale of methamphetamine he had made to a confidential informant working with police. Schalk learned that Brandon Hyde was the confidential informant. Because Pemberton believed that Hyde continued to deal drugs while working with police, Schalk sought to obtain proof of his dealing in order to impeach his credibility at trial.

Schalk discussed with Pemberton's mother the idea of proving that Hyde was still dealing drugs. Schalk then asked Pemberton's sister, a minor, whether she or someone she knew might purchase marijuana from Hyde and record the transaction. Schalk recommended purchasing a large quantity of drugs to make the impeachment evidence more "reliable." Transcript 52. When Pemberton's sister declined to help, Pemberton suggested that his friends Lisa Edwards and Roger Grubb might be willing to participate in a drug buy with Hyde.

Leslie spoke with Edwards about the plan, and Pemberton spoke with Edwards and Grubb to convince them to talk with Schalk. Edwards then spoke with Schalk several times, and Schalk assured her that the plan for Edwards and Grubb to buy marijuana from Hyde was "legit" and that none of them would get into trouble. Transcript at 45. On June 25, Schalk telephoned Edwards and Grubb, and the three subsequently met at a restaurant in Ellettsville. Schalk gave Edwards a voice recorder to use during the buy, and he told her to buy a "felony amount" of marijuana from Hyde. Transcript at 69. Schalk wrote down the serial numbers from $200

in bills and gave the buy money to Edwards.

Shortly after the meeting in Ellettsville, Edwards left Schalk a voice mail message that the drug buy had been completed. However, instead of buying $200 worth of marijuana, Edwards and Grubb bought only $50 worth of marijuana from Hyde, and the pair spent the rest of the money on gas and food. And before Edwards and Grubb met with Schalk to deliver the marijuana and return the voice recorder, Grubb decided to keep the marijuana. Edwards also deleted the recording of the drug transaction with Hyde.

When Edwards and Grubb met with Schalk, they brought a rolled up newspaper and represented that the marijuana they had purchased from Hyde was inside the newspaper. Schalk refused to take possession of the newspaper alleged to contain marijuana, and he instructed Edwards and Grubb to keep it until he could find a law enforcement officer to take possession of it. Edwards and Grubb subsequently smoked all of the marijuana they had purchased from Hyde.

In the meantime, Schalk attempted to contact six or seven law enforcement officers in an effort to find someone who would take possession of the marijuana that Edwards and Grubb had purchased from Hyde. Transcript at 117. Schalk was unsuccessful in those attempts. He eventually reached Chief Deputy Prosecutor Robert Miller at home and reported that he had arranged the drug buy, had provided the buy money, and that the transaction was complete. Schalk asked Miller for "advice on how he should deal with the disposition" of the marijuana, and Miller advised Schalk to contact Sheriff's Deputy Jerry Reed "to make a report."

State's Exhibit 1 at 9, 13. But Schalk was unable to reach Deputy Reed by telephone.

The day following the drug buy, Schalk obtained reimbursement from Pemberton's mother for the buy money, which she thought was for the cost of depositions. The same day, Schalk also "petitioned the Court [in Pemberton's criminal proceeding] to take custody" of the marijuana Edwards and Grubb had purchased from Hyde for use "in the upcoming Pemberton trial."[1] State's Exhibit 4. Apparently, Schalk believed that if the contraband was turned over to law enforcement or to the court, a crime would not have been committed. On June 26 or 27, Miller contacted the Monroe County Sheriff's Department to report Schalk's involvement in the scheme to buy marijuana from Hyde. After an investigation, Detective Shawn Karr filed an affidavit of probable cause, and the State charged Schalk with conspiracy to possess marijuana, a Class D felony.

Schalk filed various motions to dismiss the charge against him, which the trial court denied. The State ultimately amended the charge to attempted possession of marijuana, a Class A misdemeanor, after Schalk waived his right to a trial by jury. Following a bench trial, the trial court found Schalk guilty as charged, entered a judgment of conviction, and sentenced Schalk to three months, all suspended to non-supervised probation. This appeal ensued.

**DISCUSSION AND DECISION**

██ Schalk summarizes his argument on appeal as follows: "David Schalk's providing cash for the purchase of marijuana was never in dispute, and that is the basis

1. After a hearing, the trial court in Pemberton's criminal proceeding removed Schalk as

Pemberton's counsel.

of his conviction for attempted possession of marijuana. The issues presented pertain to the legality—or lack thereof—of Schalk's actions." Brief of Appellant at 7. Schalk's primary contention is that, as a defense attorney, he is "on the same legal footing as the prosecuting attorneys, other police officers, and confidential informants planning and executing controlled buys." *Id.* at 8. Thus, he reasons that his conduct did not constitute a criminal offense. We think not.

When the sufficiency of the evidence to support a conviction is challenged, we neither reweigh the evidence nor judge the credibility of the witnesses, and we affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Wright v. State*, 828 N.E.2d 904, 905–06 (Ind.2005). It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling. *Id.* at 906.

To prove attempted possession of marijuana, as a Class A misdemeanor, the State was required to prove that Schalk knowingly or intentionally took a substantial step toward possessing marijuana. *See* Ind.Code § 35–48–4–11; Ind.Code § 35–48–4–11. Schalk admitted to the trial court that he provided Edwards with money and a recording device to use in purchasing marijuana from Hyde. But Schalk asks that we recognize an exception to culpability under a criminal statute for a defense attorney who arranges a drug buy to discredit a witness against his client at trial. This we cannot do.

Schalk first contends that because law enforcement officers and confidential informants do not have constructive or actual possession of illegal drugs in the course of controlled drug buys, it follows that he did not attempt constructive or actual possession of marijuana under the facts of this case. In support of that contention, Schalk cites *Loudermilk v. State*, 523 N.E.2d 769 (Ind.Ct.App.1988). But *Loudermilk* merely sets out the law defining constructive and actual possession of contraband and does not, in any way, support the notion that private citizens have the same authority to participate in controlled drug buys as law enforcement officers. Schalk's reliance on *Loudermilk* is misplaced.

The Legislature has defined "law enforcement officer" as

(1) a police officer (including a correctional police officer), sheriff, constable, marshal, prosecuting attorney, special prosecuting attorney, special deputy prosecuting attorney, the securities commissioner, or the inspector general;

(2) a deputy of any of those persons;

(3) an investigator for a prosecuting attorney or for the inspector general;

(4) a conservation officer;

(5) an enforcement officer of the alcohol and tobacco commission; or

(6) an enforcement officer of the securities division of the office of the secretary of state.

Ind.Code § 35–41–1–17. The Legislature has not included defense attorneys in the definition of law enforcement officers.

Further, Schalk's assertion that, under *Loudermilk,* his conduct was legal given his intent to turn the marijuana from the drug buy over to police is not well taken. Intent is a mental state. *McClendon v. State,* 671 N.E.2d 486, 489 (Ind.Ct.App. 1996). Therefore, the trier of fact is entitled to make reasonable inferences based upon an examination of the surrounding circumstances and, here, the trial court did

so adversely to Schalk. *See id.* Again, we will not reweigh the evidence. The evidence supports the trial court's determination that Schalk knowingly or intentionally attempted to possess marijuana. While Schalk contends that his only intent was to deliver the marijuana to law enforcement or the court for use in defending his client at trial, such a purpose does not immunize him from prosecution.

■ Schalk next asks that we "hold that the Indiana State Legislature did not intend to prohibit Hoosiers from taking prohibited drugs away from dealers so the drugs could be kept in police custody, used as evidence in court, and destroyed." Brief of Appellant at 11. In support of that contention, Schalk directs us to Indiana Code Section 35–33–1–4, which provides:

(a) Any person *may arrest any other person* if:

(1) the other person committed a felony in his presence;

(2) a felony has been committed and he has probable cause to believe that the other person has committed that felony; or

(3) a misdemeanor involving a breach of peace is being committed in his presence and the arrest is necessary to prevent the continuance of the breach of peace.

(b) A person making an arrest under this section shall, as soon as practical, notify a law enforcement officer and deliver custody of the person arrested to a law enforcement officer.

(c) The law enforcement officer may process the arrested person as if the officer had arrested him. The officer who receives or processes a person arrested by another under this section is not liable for false arrest or false imprisonment.

(Emphasis added). But no reasonable interpretation of the statute could support Schalk's contention on this issue. Schalk does not suggest, and there is no evidence, that he ever tried to "arrest" Hyde. Rather, Schalk arranged an illegal drug buy. Schalk's contention on this issue is without merit.

■ Schalk also alleges that

"[t]he constitutional right of people accused of crimes to defend themselves is under attack. Chad Pemberton is not a party to this appeal, but David Schalk has standing to assert his right to defend his clients as part of the guarantees of the Sixth Amendment to the Constitution of the United States of America and Article I, Section 13 of the Constitution of Indiana."

Brief of Appellant at 11–12. We agree that Schalk's client has a right to legal representation guaranteed by both the federal and state constitutions. But we reject Schalk's contention that an attorney, an officer of the court, who has given an oath to support the Constitution of the United States and the Constitution of the State of Indiana is authorized to engage in criminal activity in defense of his client under either the Sixth Amendment or Article I, Section 13.

■ Finally, Schalk makes other vague contentions in his argument on appeal related to due process and "disparate treatment." But Schalk's contentions on each of those constitutional claims are not supported by cogent argument or coherent legal analysis. A mere citation to constitutional provisions or legal precedent, without more, is insufficient to preserve an issue for appellate review. We are unable to decipher Schalk's argument on those remaining issues, and, thus, these issues do not warrant our consideration.[2]

## Conclusion

In sum, Schalk asks this court to grant him the same "legal footing" as law enforcement officers for the purpose of conducting an illegal drug buy in an effort to discredit a witness against his client. The legislature has clearly identified those persons legally authorized to engage in law enforcement, and defense attorneys are not included. *See* Ind.Code § 35–41–1–17. An attorney is not exempt from the criminal law even if his only purpose is the defense of his client. "Under the Code of Professional Responsibility an attorney is charged with defending and advancing the interests of his clients within the framework of our legal system." *Matter of Mann*, 270 Ind. 358, 385 N.E.2d 1139, 1143 (1979). "It should be abundantly clear that an attorney cannot resort to illegal means in order to obtain a favorable disposition for his client." *Id.* This is not a close case. The material facts are undisputed and fully support the trial court's judgment of conviction. Schalk has not shown reversible error.

Affirmed.

DARDEN, J., and BAILEY, J., concur.

---

2. Further, as the State points out, some of the issues set out in Schalk's Statement of the Issues are not addressed at all in the Argument section of his brief on appeal. We consider only contentions raised and supported by cogent argument in the Argument section of an appellant's brief. *See* Ind. Appellate Rule 46(A)(8)(a).