## In the Matter of David M. GEISLER.

### No. 75S00–9105–DI–374.

Supreme Court of Indiana.

June 7, 1993.

Charles A. Asher, South Bend, for respondent.

Jeffrey D. Todd, Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

The respondent, David M. Geisler, was charged in a complaint for disciplinary action with engaging in conduct prejudicial to the administration of justice by obstructing the prosecuting attorney's access to evidence, in violation of Rules 3.4(a), 8.4(c) and (d) of the *Rules of Professional Conduct* and Rule 7–102(A)(7) of the preceding *Code*

*of Professional Responsibility.* The disciplinary charges arose out of his representing Larry Baughman on child molesting charges. This court appointed the Honorable Daniel Molter as hearing officer who heard the evidence and tendered his report on findings and conclusion. The respondent challenged many of the findings and conclusions, and the Disciplinary Commission filed its response.

 The review of disciplinary cases is *de novo,* and this court examines all matters presented. This includes a review not only of the hearing officer's report but also of the entire record tendered in the case. The hearing officer's findings receive emphasis due to the unique opportunity for direct observation of witnesses, but this court remains the ultimate factfinder and arbiter of misconduct and sanction. *Matter of Levinson* (1992), Ind. 604 N.E.2d 599; *Matter of Smith* (1991), Ind., 579 N.E.2d 450; *Matter of Gemmer* (1991), Ind., 566 N.E.2d 528. Respondent's challenges to the findings will be addressed within the context of such review.

Respondent further contends that delay in the filing of this proceeding impaired his ability to defend himself and that, under such circumstances, an outright finding for the respondent can be appropriate. This issue was a subject in the parties' closing arguments. Although the hearing officer did not specifically address it in his findings and conclusions, by finding misconduct, he impliedly found respondent's contention unpersuasive.

The parties stipulated that the Disciplinary Commission decided in December of 1987 that probable cause existed and directed the filing of a verified complaint. The complaint, however, was not filed until May 17, 1991, and the Commission gave no reason for this delay.

 No statute of limitation exists for bringing disciplinary proceedings. There may be factual situations in which the expiration of time destroys the fundamental fairness of the entire proceeding, thus, rising to the level of due process violation. *Matter of Wireman* (1977) 270 Ind. 344, 367 N.E.2d 1368; *Matter of Wm. Briggs* (1987), Ind., 502 N.E.2d 879. However, mere delay, as in this case, does not preclude a disciplinary proceeding. Respondent likens his theory of defense to the doctrine of laches. In civil matters this ancient equitable doctrine consists of three elements: inexcusable delay in asserting a right; implied waiver from knowing acquiescence in existing conditions; and circumstances resulting in prejudice to the adverse party. *Haas v. Holder* (1941), 218 Ind. 263; 32 N.E.2d 590; *Estate of Dorothy Gerke v. Estate of Elmer Gerke* (1991), Ind.App. 580 N.E.2d 972; *Simon v. City of Auburn, Ind., Bd. of Zoning Appeals* (1988), Ind.App., 519 N.E.2d 205. Some jurisdictions have recognized the equitable doctrine of laches as a defense in disciplinary matters but only upon the showing of specific prejudice. Some consider the delay as a factor in determination of the appropriate discipline to be imposed; in others, delay is not considered a bar.[1]

 This court has not had an occasion to consider whether laches may be a defense to a disciplinary proceeding. We note that the record before us only indicates unexplained delay in the filing of a verified complaint during a confidential stage in the process when the complaint remained out of the public sphere. Respondent cross-examined each witness extensively and had ample opportunity to challenge their memory and credibility. In the end, the adverse witnesses remained consistent in the gist of their testimony.

1. Delay may be a defense but only upon showing of prejudice: *Office of Disciplinary Counsel v. Davis,* 532 Pa. 22, 614 A.2d 1116 (1992); *Committee on Professional Ethics and Conduct of the Iowa State Bar Assoc. v. Wunschel,* 461 N.W.2d 840 (Iowa 1990); *Matter of Weiner,* 120 Ariz. 349, 586 P.2d 194 (1978).

Delay may be a mitigating factor: *Disciplinary Proceedings Against Eisenberg,* 144 Wis.2d 284, 423 N.W.2d 867, 869 (1988); *Hawkins v. The State Bar,* 23 Cal.3d 622, 153 Cal.Rptr. 234, 591 P.2d 524 (1979).

Delay is not a bar to disciplinary proceeding: *Attorney Griev. Comm'n v. Owrutsky,* 322 Md. 334, 587 A.2d 511, 513 (1991); *In re Weinstein,* 254 Or. 392, 459 P.2d 548, 549 (1969).

See also 93 A.L.R.3d 1057.

In light of this, we find that this case does not present an appropriate factual basis for addressing the issue.

■ Having considered the entire record before us, we find that the respondent has been a member of the Bar of this state since October 12, 1978. In 1986, he was retained by Larry Baughman to represent him on six counts of child molesting and attempted child molesting. Respondent entered his appearance in the case on November 14, 1986. The complaining witness was Carolyn Baughman, Larry Baughman's wife, and the victim was their daughter. The defendant had threatened Carolyn Baughman, and she feared physical violence from her husband. Nonetheless, no CHINS petition was filed nor was there any legal restriction preventing the defendant from contacting or residing with the family during the pendency of his prosecution. After the arrest, the defendant was released on bail and for some two or three months preceding his trial lived with the victim and the complaining witness.

In the course of the representation, the respondent learned that the defendant's acts of molestation had continued for few years prior to the arrest and that the defendant had a noteworthy criminal record. Carolyn Baughman did not want her daughter to testify at trial and made respondent aware of her feelings. The hearing officer concluded that she feared her husband and also did not want to expose her daughter to the trauma of the criminal process. There was some testimony that perhaps she was fearful of breaking up her marriage and being unable to manage on her own. Whatever her reasons, it was clear that she did not want her daughter to testify at trial.

The initial strategy for the defense was to have the family unit seek and complete counseling and use this fact to urge favorable treatment in a plea negotiation and/or sentencing determination. Carolyn Baughman preferred a Christian counselor, and respondent and his secretary, Janis Sims, referred the family to a pastor. Those attempts, however, were unproductive, and

Mrs. Baughman continued in her conviction not to testify or allow her daughter to testify. Although Mrs. Baughman made this clear to the prosecuting attorney, he firmly believed that both would ultimately do so, if necessary, and, therefore, he issued no subpoenas until he grew leery some few days prior to trial.

The hearing officer found that during the early phases of preparing a defense strategy, Mrs. Baughman sought to learn the outcome and effect on the trial if the daughter was unavailable to testify. According to the respondent, Mrs. Baughman asked him what would happen if the daughter attended the trial but failed to testify. Mrs. Baughman testified that, although she does not remember asking the question, she may have asked something like "does the wife have to testify against her husband?" In response to this sort of inquiry, the Respondent discussed relevant case law with the Baughmans and provided them with copies of two cases, *Watkins v. State* (1983), Ind., 446 N.E.2d 949 and *Laswell v. State* (1986), Ind., 494 N.E.2d 981. Respondent testified that his purpose in providing the cases was to demonstrate to the Baughmans that statements given to the police by Mrs. Baughman and the daughter were pretty much "set in stone." The two cases follow the *Patterson*[2] exception to the hearsay rule which provides that a prior statement of a witness is admissible, not only for the purposes of impeachment, but also as substantive evidence provided the statement is admitted and the witness is present at trial for cross-examination.

On January 30, 1987, at the last scheduled pretrial conference, the respondent urged his client to accept a plea agreement, but Baughman rejected the proposal.

Trial was set for Monday, February 16, 1987. On the previous Friday, February 13, 1987, the sheriff attempted to serve Mrs. Baughman and her daughter with subpoenas at their residence and was advised by Larry Baughman that they were gone. Neither Mrs. Baughman nor her

---

**2.** *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482.

daughter appeared at the scheduled trial, and the prosecution sought a continuance.

The testimony as to what transpired after the rejection of the plea is conflicting and hotly contested. Mrs. Baughman testified that the respondent advised her to leave the state, go as far as she could, and that he did not want to know where. It was his assessment, that without her and her daughter's testimony, the case would have to be dismissed. Larry Baughman corroborated this testimony. Respondent's secretary, Janis Sims, also testified that she overheard respondent's telephone conversation with Mrs. Baughman, within two weeks of the trial, during which he advised Mrs. Baughman to take her daughter out of school and leave so that she could not be served with a subpoena and would not be under a court order to appear. Respondent denied these accusations and insisted that he advised Mrs. Baughman not to leave, but if she did, she was to call the judge and let him know she would not appear at the trial.

The hearing officer found that shortly after the rejection of the proposed plea agreement, Mrs. Baughman made it clear that she was leaving the family residence with her daughter and would avoid any service of subpoenas. She was told by respondent that if she intended to do so, it would be best to leave the state and that she should call the judge on the day of trial and advise him that she would not testify or permit the daughter to do so. Respondent also told her that he did not want to know their destination.

Mrs. Baughman and her daughter in fact went to Marshall County where they stayed with friends. They returned to their home on Friday, February 13, to acquire more clothes. While they were there, a deputy sheriff approached the home in an attempt to serve them with subpoenas, but was advised by Larry Baughman that they were not present and that Baughman was unaware of their whereabouts. In fact, Baughman helped them escape through a rear window.

Baughman testified that he advised respondent of his own actions. He testified that the respondent had advised him to deny knowing his wife and daughter's whereabouts, but both Baughman and the respondent agree that respondent advised him to testify truthfully at the scheduled trial. Baughman's criminal trial was continued, and he and Mrs. Baughman were charged with obstruction of justice.

The hearing officer also found that the evidence is undisputed that respondent made little or no effort to prepare for the trial.

Shortly after the trial was continued, the county Department of Public Welfare filed a CHINS petition, and the daughter was removed from the custody of the Baughmans. Respondent withdrew his appearance from the Baughman case, and sometime thereafter Larry Baughman accepted a plea agreement. The charge of obstruction of justice against Mrs. Baughman was dismissed pursuant to the terms of Larry Baughman's plea agreement, and ultimately the daughter was returned to the mother's custody.

Respondent challenged the credibility of the three adverse witnesses. He argued that the Baughmans decided between themselves that Mrs. Baughman and the daughter should be unavailable for service and trial. He claimed that they misinterpreted the cases to which he had referred them causing him to regret his action. Janis Sims corroborated his sentiment of regret. Respondent also attributed their adverse testimony to a need to blame someone for their criminal obstruction of justice. Respondent attacked Janis Sims's credibility contending that her ability to overhear was impaired and that her memory of some of the surrounding events was not clear.

The hearing officer heard and observed the witnesses and their exhibits, carefully weighed the arguments, and determined that the respondent did in fact assist Carolyn Baughman and her daughter in obstructing the prosecuting attorney's access to evidence. The hearing officer's assessment of the evidence and his judgment in reconciling conflicting testimony carries great weight. *Matter of Kern* (1990), Ind., 555 N.E.2d 479. Our examination of the

record indicates that the evidence for his conclusions is clear and convincing.

Although he contends that he provided copies of cases to the Baughmans to convince them that their out-of-court statements to the police were as good as "set in stone", the cases indicated, contrary to Respondent's contention, that those statements indeed could not be introduced if the witnesses were not present in court to be cross-examined. Respondent's own testimony was that he provided these cases in response to Mrs. Baughman's statements that she and her daughter would show up in court but wouldn't testify. Respondent further advised Mrs. Baughman that if they were subpoenaed and failed to show up, they would be in contempt of court. This advice could just as easily have convinced Mrs. Baughman that it was indeed better not to appear at the trial.

After Baughman refused to plead guilty, the respondent became fully aware that the State's witnesses would not testify. Respondent had frequent and lengthy contacts with Mrs. Baughman days before the scheduled trial, talking with her on February 10, attempting to call her on the 11th and again talking with her on February 12. During these lengthy conversations, Respondent talked to her about many issues and he stated "... I supposed probably talked to her in response to her questions about the legality or illegality of trying to avoid subpoenas." Respondent did virtually no preparation for Larry Baughman's trial but on February 11, he researched the issue of prosecutorial due diligence in calling witnesses and "... what burden I thought he (the prosecutor) had to prove if he in fact filed a motion for continuance." This indicates respondent's expectation of a motion for continuance based on the witnesses' failure to appear and his intent to challenge such motion.

These circumstances corroborate the testimony of the three witnesses leading us to the inescapable conclusion that respondent was fully aware that Mrs. Baughman and her daughter would not avail themselves to service partly due to respondent's advice. We agree with the hearing officer's conclu-sion that the respondent exploited his knowledge gained from inappropriate contact with the State's material witnesses and stood by silently while the State's case was impeded. He fully expected that the prosecution's witnesses would not testify and, rather than prepare for trial, prepared to challenge the requested continuance.

The extent of Respondent's contact with Mrs. Baughman, his knowledge of her firm intent not to attend the trial, his knowledge that she relied on the case law provided by him, his preparation not for trial but to contest a motion for continuance, all indicate, at best, respondent's collusion in the obstruction of justice. Such conduct frustrates the orderly administration of justice and reflects negatively on the legal profession. We conclude that by his conduct the respondent assisted the Baughmans in their effort to withhold evidence and to frustrate the orderly administration of justice.

Having determined that Respondent engaged in misconduct, we must assess an appropriate sanction. This involves an analysis of the offense, actual or potential injury, the state of mind of the respondent, the duty of this court to preserve the integrity of the profession, the risk to the public, and matters in mitigation or aggravation. *Matter of Cawley*, (1992), Ind., 602 N.E.2d 1022. The procedure of the adversary system contemplates that the evidence in a case is to be marshalled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure and the like. Comment to Rule 3.4 of the *Rules of Professional Conduct.* This offense strikes at the heart of an orderly system of justice. Respondent breached his ethical duty as a lawyer to the legal system, the public and the legal profession. On the other hand, we are convinced that, although he acted knowingly, the respondent did not act with the conscious objec-

tive or purpose to reach the ultimate outcome.[3]

Under these circumstances, we find that a period of suspension with automatic reinstatement appropriately addresses the severity of the offense and reflects the particular circumstances of Respondent's conduct. It is, therefore, ordered, that the respondent David M. Geisler, is suspended from the practice of law for a period of ninety (90) days, at the expiration of which he will be automatically reinstated. This suspension is effective July 7, 1993.

Costs are assessed against the respondent.

**3.** *American Bar Association Model Standards for Imposing Lawyer Sanction, Theoretical Framework,* list the respondent's mental state as one of the factors to be considered in imposing a sanction. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct but without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation.