**In the Matter of David A. KERR.**

No. 64S00–9009–DI–579.

Supreme Court of Indiana.

Oct. 12, 1994.

David A. Kerr, pro se.

David B. Hughes, Indianapolis, for The Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

PER CURIAM.

The Respondent, David A. Kerr, was charged in a single count *Complaint for Disciplinary Action* with violating Rules 1.15(a), 1.15(b), 3.1, 3.2, 3.4(c), 4.4, 8.4(a), 8.4(b), and 8.4(d) of the *Rules of Professional Conduct for Attorneys at Law*. The charges arose from Respondent's handling of clients' funds. The case was heard by a hearing officer appointed by this court pursuant to Ind. Admission and Discipline Rule 23, who tendered his report on findings, conclusions and recommendation. The case is now before us upon the Respondent's petition for review and the Commission's response.

Our review of attorney discipline cases involves a *de novo* examination of all matters presented. This includes review not only of the hearing officer's report but also of the entire record in the case. The hearing officer's findings receive emphasis due to his or her unique opportunity for direct observation of witnesses, but this court remains the ultimate fact-finder and arbiter of misconduct and sanction. *Matter of Geisler* (1993), Ind., 614 N.E.2d 939; *Matter of Smith* (1991), Ind., 579 N.E.2d 450; *Matter of Gemmer* (1991), Ind., 566 N.E.2d 528. Respondent's challenges to the findings and conclusions will be addressed within the framework of such *de novo* review.

The Respondent was admitted to the Bar of the State of Indiana in 1984. He practices law in Porter County, Indiana. Upon review of all matters tendered in this case, we find that in the fall of 1988, Respondent represented Ronald Cleveland ("Cleveland") in a dissolution proceeding in the LaPorte Superior Court No. 2, Judge Paul J. Baldoni presiding. By an order of December 7, 1988, the trial court ordered that Cleveland apply any tax refunds he might receive for the taxable years beginning in 1988 to child support arrearage which Cleveland owed. In addition, on April 20, 1989, the parties in the dissolution proceeding filed an agreed order which also recited that Cleveland "shall forward his federal and state tax refunds to attorney Fox immediately upon receipt of same." Mary Fox was the attorney representing the opposing party in the dissolution, Melody Cleveland Mello.

In June 1989, Cleveland received $1,281.00 in refunds which he delivered to Respondent. Respondent deposited the money in a checking account entitled "David A. Kerr, Client Trust Account." The Respondent did not turn over these funds as directed in the above two court orders until February 5, 1990, when the court again ordered him to do so. The findings regarding the intervening events between the receipt and transmittal of the funds are the subject of Respondent's challenges. The Respondent admitted during the hearing and now before us on review that he used the client trust account in which he deposited Cleveland's funds as a business

checking account on which he regularly wrote checks for non-client expenses. These expenses included rent, secretarial salary, insurance bills, publication expenses, and even his annual attorney registration fee to the Indiana Supreme Court Disciplinary Fund. On checks of this nature, the Respondent struck out the designation "client's trust account." By the end of the month of deposit, June 30, 1989, the account was reduced to $362.77 despite the deposit of an additional $934.79 on June 14, 1989, unrelated to Cleveland. Also on June 14, 1989, and June 27, 1989, Respondent wrote two checks on his trust account to "cash" for $357 and $340 respectively.

Respondent contends that shortly after receipt of the Cleveland tax refund, he attempted to forward a check for $1,281 to attorney Fox. However, according to Respondent, the envelope was returned, and the Respondent destroyed the check. We note here, that during that time the account did not have sufficient funds to cover such a check. Thereafter Respondent testified, Cleveland instructed Respondent not to let the funds go to attorney Fox. Respondent also contends that after the depletion of his account to a balance below the amount deposited from the Cleveland check, the Respondent maintained Cleveland's funds in trust in the form of cash and used them when needed to pay negotiated settlements of Cleveland's debts. This claim was uncorroborated by any documented evidence or testimony.

On June 23, 1989, on October 13, 1989, and again on January 26, 1990, opposing counsel Mary Fox wrote Respondent inquiring about the whereabouts of Cleveland's tax refunds. During the first week of July, Respondent ran into Mary Fox in Michigan City, Indiana, where the issue of the tax refunds came up. Fox recalled that Respondent told her that he had Cleveland's tax refund checks and would be sending them to her very shortly. Respondent contends that he advised Fox that his efforts to forward the funds were being hindered by Cleveland. Other than this contact, Respondent never responded to any of Fox's inquiries as to the whereabouts of the funds.

On August 22, 1989, attorney Fox filed for a *Rule to Show Cause* why Cleveland should not be held in contempt. The court scheduled a hearing for February 5, 1990. Two weeks prior to the hearing, on January 19, 1990, Respondent filed a *Petition for Relief from Court Order, Petition for Modification, and Petition for Rule to Show Cause* purporting, among other things, to contest Cleveland's obligations concerning the disposition of the 1988 tax refunds.

At the conclusion of said hearing the court entered *Findings and Order*, concluding that the failure to forward the tax returns as ordered remains unexplained by Mr. Kerr, that the pleadings filed by him on behalf of Cleveland were "totally without merit," and that "(N)ot one shred of the testimony in this Court's opinion of either party supports the grounds raised in these Petitions." The court concluded that the petitions were filed in bad faith. The order also stated that Cleveland had made every attempt to satisfy the agreed entry of the parties but that this Respondent did not forward the funds for some unexplained reason. The court assessed Melody Cleveland Mello's travel costs and attorney fees, totalling $816.29, against Respondent personally. The court also ordered that Respondent turn over the tax refunds instanter. The hearing officer found that during the February 5th hearing before Judge Baldoni, the Respondent falsely stated in open court that he was still holding all of the proceeds of Cleveland's tax refunds in his client trust account when, in fact, the money was in cash which he used to purchase a cashier's check for deposit with the clerk. Respondent's position on this issue is that the trial court's order generally is a misrepresentation of what happened in Judge Baldoni's court on February 5, 1990, and that he only stated that he had the funds available but did not represent where. The trial court's order was not appealed, and Respondent complied with the order and paid $1,281 to the Clerk and $816 to attorney Fox.

During the hearing in this disciplinary proceeding and in his pleadings now before us, the Respondent does not deny the fact that he did not maintain clients' funds separately or that he used them as his own to pay his

operating expenses. The premise of his argument, unsupported by any authority, seems to be that he was not required to do so. The plain language of Prof.Cond.Rule 1.15 is abundantly clear in requiring that a lawyer shall hold property of clients or third persons separate from his own, in an account; upon receipt of funds belonging to a client or a third person, and shall render a full accounting. Even if the clear language of this rule did not specifically impose these duties, the nature of the fiduciary relationship required that Respondent keep funds entrusted to him in a distinct, documented format and not use the same for his own purposes.

Having thus explained his depletion of the client trust account, the Respondent moved on to explain the reason for his failure to turn over the funds, attributing this failure to the wishes of the client and unspecified client confidences. In making this claim, Respondent seems not at all concerned by the fact that his client was under two court orders to turn over the funds. Respondent presented no evidence during the hearing in this disciplinary proceeding that would tend to corroborate his contentions. We also note that in his order and findings following the February 5, 1990 hearing, Judge Baldoni found that Respondent's failure to turn over the funds as previously ordered "remains unexplained."

The Respondent insists that because the hearing officer did not adopt Respondent's explanations as findings of fact, somehow the burden of proof was shifted upon him to prove his innocence. Respondent confuses the concepts of the shifting of the burden of proof with the hearing officer's obligation to weigh conflicting evidence, including the credibility of a witness who takes the witness stand in his own behalf. The undisputed facts are that Respondent used funds from his client trust account for payment of his own business expenses, that in the process he depleted the account below the amount that should have been available from the Cleveland tax refunds, and that he failed to turn the funds over as his client had been ordered to do so by the trial court. The hearing officer heard and observed the witnesses and their exhibits, carefully weighed all arguments and concluded that Respondent did not use his account appropriately, that he converted a portion of Cleveland's funds, and, in all likelihood, did not utilize the cash withdrawals for the benefit of Cleveland. The hearing officer's assessment of the evidence and his judgment in reconciling conflicting evidence carries great weight. *Matter of Kern* (1990), Ind., 555 N.E.2d 479; *Matter of Geisler* (1993), Ind., 614 N.E.2d 939. Our examination of the record indicates that the evidence for the Hearing Officer's conclusion is clear and convincing.

In addition to the challenges discussed above, Respondent contends generally that (1) the verified complaint was so vague and ambiguous that he could not defend himself; (2) the verified complaint initiating this proceeding included allegations which were not contained in the original grievance filed with the Commission and; (3) the hearing officer lacked authority to make conclusions of law.

We note that none of the contentions is supported by any authority, and none was found. In regard to the first contention noted above, the *Verified Complaint for Disciplinary Action* filed against Respondent sets out eight allegations of very specific acts which would constitute specific violations under the *Code of Professional Responsibility for Attorneys at Law*. The hearing officer's conclusions clearly track these specifically alleged acts of misconduct. The second contention is equally meritless. Admission and Discipline Rule 23, Section 10(d) provides that the Commission "shall not be limited to an investigation or consideration of only matters set forth in the grievance, but shall be permitted to inquire into the professional conduct of the attorney generally." The *Verified Complaint for Disciplinary Action* was filed in September of 1990 thereby giving ample notice to Respondent of each and every charge against him. The last claim cited above is equally untenable. Admission and Discipline Rule 23(13)(d) vests the hearing officer with wide authority including authority to make recommendations to this court and to do "all things necessary and proper to carry out their responsibilities under this rule."

In light of the foregoing considerations and the findings of fact set out above, we conclude that Respondent failed to keep clients' funds separate from his own, in violation of Prof.Cond.R. 1.15(a) and that he failed to promptly deliver or to render a full accounting of funds that Melody Cleveland Mello was entitled to receive, in violation of Prof. Cond.R. 1.15(b). By using funds from his client trust account to pay for his own obligations, resulting in an insufficient balance, Respondent converted client funds and engaged in a criminal act that reflects adversely on his honesty, trustworthiness and fitness as a lawyer, in violation of Prof.Cond.R. 8.4(b). By accepting Cleveland's tax refund, depositing the same in his account and then depleting the account to below the amount of the deposit and refusing to turn said funds over pursuant to two court orders, Respondent delayed the proceeding and knowingly frustrated the court's order, in violation of Prof.Cond.Rules 3.2 and 3.4(c). Further, Respondent violated Prof.Cond.R. 3.1 by filing the three frivolous petitions. Respondent's failure to deliver the funds and his filing of totally meritless pleadings constitute a violation of Prof.Cond.R. 4.4. Respondent's entire conduct surrounding the tax refund and subsequent pleadings is conduct prejudicial to the administration of justice, violative of Prof.Cond.R. 8.4(d).

Having found that Respondent engaged in the charged misconduct, we must now assess an appropriate sanction. This involves an analysis of the nature of the misconduct, the actual or potential injury, the state of mind of the Respondent, the duty of this court to preserve the integrity of the profession, the risk to the public, and matters in mitigation or aggravation. *Matter of Clanin*, (1993), Ind., 619 N.E.2d 269; *Matter of Geisler, Supra, Matter of Cawley, Jr.*, (1992), Ind., 602 N.E.2d 1022. The very nature of Respondent's misconduct, misuse of client funds, indicates a serious breach of professional duties necessitating a strict sanction. *Matter of Bates* (1994), 635 N.E.2d 1096. It raises grave concerns as to Respondent's understanding of his professional duties as a lawyer. Even more troubling is his insistent claim that his handling of client funds was in full compliance with the *Rules of Profession-al Conduct*. This amazing lack of cognition of wrongdoing renders the success of Respondent's future professional rehabilitation questionable. We note that the hearing officer made no recommendation as to sanction but did recommend that Respondent attend a course on the *Rules of Professional Conduct* "as his knowledge of these rules appeared woefully inadequate." The Disciplinary Commission appropriately cites to Standard 3.0 of the *American Bar Association Standards for Imposing Lawyer Sanctions*, which provides that disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client. There were no findings of specific mitigating circumstances, but we note the absence of previous disciplinary sanctions against Respondent.

With these considerations in mind, we conclude that a substantial period of suspension from the practice of law is appropriate. At the conclusion of the suspension, the Respondent may seek restoration of his privilege to practice law in the State of Indiana by applying for reinstatement and, by clear and convincing evidence, demonstrating to this court that he meets all the requirements set out in Admis.Disc.R. 23(4), that he has successfully completed a CLE board certified course on professional ethics, that he has a proper understanding and attitude towards the standards that are imposed upon members of the bar and will conduct himself in conformity which such standards, and that his attitude towards the misconduct is one of genuine remorse.

It is, therefore, ordered that David A. Kerr is suspended from the practice of law in the State of Indiana for a period of not less than eighteen (18) months, beginning November 7, 1994.

Costs of these proceedings are assessed against the Respondent.

SHEPARD, C.J., and DeBRULER, DICKSON, and SULLIVAN, JJ., concur.

GIVAN, J., dissents and would disbar.