**In the Matter of Marlin K. McDANIEL.**

**No. 483S138.**

Supreme Court of Indiana.

Nov. 27, 1984.

Robert W. McNevin, Indianapolis, for respondent.

Sheldon A. Breskow, Executive Secretary, William G. Hussman, Jr., Staff Atty.,

Indianapolis, for Ind. Supreme Court Disciplinary Com'n.

PER CURIAM.

This proceeding is now before the Court on an eight-count amended complaint for disciplinary action filed by the Disciplinary Commission of this Court. Prior to the final hearing of this cause, the Disciplinary Commission voluntarily dismissed Counts I, III and V. The Hearing Officer appointed pursuant to Admission and Discipline Rule 23, received evidence on the remaining counts and has tendered his findings of fact and conclusions of law. Respondent now petitions for review of the Hearing Officer's tendered findings and requests oral argument. The Respondent and the Disciplinary Commission have filed briefs in support of their respective petitions. Additionally, Respondent has petitioned that this Court consider newly discovered evidence.

Respondent's "Request for Oral Argument" is now denied. Respondent's "Petition to Submit Newly Discovered Evidence" is granted and Exhibit A of such petition will be deemed part of the record now before this Court on review.

In his Petition for Review, Respondent asserts that the underlying circumstances upon which Counts II and VIII are predicated were the foundation of a prior criminal proceeding wherein the Respondent was found not guilty. Respondent argues that to face these charges again constitutes double jeopardy. In his Brief, Respondent further argues that Count VII also should be dismissed in that this accusation was the basis of an informal Bar Association inquiry which did not result in the initiation of charges.

■ This Court has previously held that a disciplinary action is not a criminal proceeding; thus, the application of constitutional standards generally afforded the criminal defendant is not appropriate in all particulars. *In re Roberts*, (1983) Ind., 442 N.E.2d 986; *In re Kesler*, (1979) 272 Ind. 161, 397 N.E.2d 574; *In re Mann*, (1979) 270 Ind. 358, 385 N.E.2d 1139. Constitutional standards must be measured within the unique framework of the disciplinary proceeding. *In re Roberts, supra.*

■ Additionally, this Court has noted that the discipline of a member of the Bar of this State is independently determined from any other proceeding, even if the alleged professional impropriety is criminal conduct. *In re Mann, supra; In re Crumpacker*, (1978) 269 Ind. 630, 383 N.E.2d 36, cert. denied 444 U.S. 979, 100 S.Ct. 481, 62 L.Ed.2d 406; *In re Wireman*, (1977) 270 Ind. 344, 367 N.E.2d 1368, cert. denied 436 U.S. 904, 98 S.Ct. 2234, 56 L.Ed.2d 402 (1978). Accordingly, this Court now finds no constitutional prohibition to our review of the remaining charges of misconduct lodged against Respondent on the merits.

■ Respondent further asserts in his petition for review that the tendered findings of fact are not supported by the evidence, are contrary to the evidence and against the clear weight of the evidence and that the conclusions reached by the Hearing Officer are not supported by the evidence and are contrary to law. These matters must be considered within the process of our review of the case, which includes an examination of the record presented, the Hearing Officer's tendered findings and the exceptions taken to such tendered findings by the party petitioning for review. *In re Welke*, (1984) Ind., 459 N.E.2d 725. Although this Court is not bound by the findings tendered by the Hearing Officer, such findings do receive emphasis in that the Hearing Officer observes the witnesses, absorbs the nuances of unspoken communication, and by this observation attaches credibility to the testimony. *In re Murray*, (1977) 266 Ind. 221, 362 N.E.2d 128.

In this case, Respondent's testimony is in conflict with other evidence presented in this cause. The Hearing Officer chose not to accept all of the Respondent's representations. The record presented for review supports the findings of the Hearing Officer.

In light of the above considerations, this Court now finds upon review of all matters presented under this cause, that the Respondent is a duly licensed attorney in the State of Indiana and, accordingly, is subject to the discipline of this Court.

█ The allegations of professional misconduct raised under Counts II, IV and VIII all concern events which transpired on the evening of November 29, 1980, and the following morning. Accordingly, these Counts will be simultaneously considered.

In this regard we now find that on the evening of November 29, 1980, at approximately 11:00 P.M., Jennifer Schoon left her place of employment with a co-worker, met Marilyn Sittloh, and went to "Smiley's Pub" in Richmond, Indiana. They stayed at "Smiley's" for at least one hour and while there saw the Respondent. Between 1:00 and 3:00 a.m. on November 30, 1980, Schoon dropped off her companions and went to the house of Joe Dickman on Boston Pike, where she remained throughout the night. Schoon "paid rent at 10 Howard Place", but lived part of the time at this residence on Boston Pike. Schoon drove her vehicle throughout the evening and was not aware of any damage to this vehicle when she arrived at the home of Dickman.

The Respondent met Benjamin Miller at "Smiley's Pub" during the evening of November 29th and left with him to visit a few other bars, returning between 2:30 and 3:00 a.m. on November 30th. Respondent left with Miller and Miller's wife and eventually went to the residence of Joe Dickman. Upon arrival, Respondent approached to the back door and rang the bell. Following no response, Respondent kicked the door. Respondent then went to a window and broke out the glass. A shot was fired inside and Respondent displayed a small gun. Miller, who was fearful of this circumstance, called out to Dickman, who then let the three of them enter. During this episode the Respondent appeared upset and emotional.

After entering the Dickman residence, Respondent confronted Schoon concerning the whereabouts of Marilyn Sittloh. Following such discussion the parties retired, Respondent going to a spare bedroom.

Early the next morning, Schoon and Dickman decided to go out for breakfast. At this time Schoon discovered that her automobile had been damaged during the night. It appeared that the vehicle had been struck by several bullets. They returned to the house, removed Respondent's gun from his clothing while he slept, and inspected it to determine whether or not it had been fired; Schoon and Dickman concluded the gun had not been fired. They searched Respondent's car for any other weapons, but did not find anything. Afterwards, they left and had breakfast.

Schoon and Dickman returned to the residence approximately one hour later. The Millers were awake and the Respondent was awakened. At that time all parties were informed of the damage to the vehicle and the Respondent examined the damage. Respondent stated that he was not responsible, but would "take care of it".

Thereafter, Schoon obtained an estimate for repair of this damage and met with Respondent in his office on December 1, 1980. On December 3, 1980, Respondent wrote Schoon and indicated that he "would be glad to provide you with such coverage" as his policy would permit, but had checked and determined that he had no coverage for this incident. Schoon felt that the Respondent was going to back out on his promise.

Schoon did not return to Respondent's office and had little contact with Respondent during the next two weeks. Then she received a letter from the Respondent as follows:

"Dear Jennie:

The attached correspondence will go out tomorrow to the Richmond Police Department. I doubt they will contact you either by phone, letter or personally. In event they do, just be polite and tell them you are leaving the entire matter in my hands and would like for them to see me. Likewise, I do not believe they will

want to ask you any questions, but if they should request, tell them you would be happy to answer any questions, but you would want me to be present, and ask them to see me and make the arrangements.

In conclusions, you really have nothing to be concerned about—just let me handle all the police reporting matters and there will be no complications."

On or about December 15, 1980, the Respondent sent the following letter to the Richmond Police Department:

"Gentlemen:

I am writing as attorney for Miss Jennifer Schoon, 10 Howard Place, Richmond, Indiana, to report vandalism and damage to her car Saturday night, November 29th. Miss Schoon had insurance to cover the vandalism, but is advised by her insurance carrier that she must likewise file a police report to comply with insurance coverage. Miss Schoon is a law-abiding citizen, has never been involved in any problems, and is in her last semester as a Registered Nursing student at Indiana University East. Consequently, she wants to avoid any undue publicity regarding the matter.

Specifically, Miss Schoon arrived at her home, 10 Howard Place, approximately 9:00 to 9:30 P.M., Saturday, November 29th, and did not leave until the next morning around 8:30. Upon leaving, she found that her 1980, blue, 2-door Ford Mustang, had apparently received at least two shots from a firearm, breaking her two front windows and damaging a center post in the auto. She did not hear any gunshots or suspicious sounds that night and knows of no one who would want to cause her a problem. She believes it may be a case of general vandalism, or perhaps someone mistaking her auto for another person's vehicle. In any event, she has had the damage repaired, and has had no problems of any nature since the incident.

If you need additional information, or documents filled out by Miss Schoon, please let me know and I shall arrange to have them completed. Needless to say, she was quite upset over the situation, does not want undue publicity because of her pending RN degree—and thus has asked that I do all I can in filling out forms and assisting her in the foregoing."

Under Count II of the Complaint now before this Court, the Respondent, with regard to his letter of December 15, 1980, is charged with knowingly making a false statement of law or fact; counselling or assisting a client in conduct that the lawyer knows to be illegal or fraudulent; engaging in conduct, contrary to the disciplinary rules, which involves dishonesty, deceit or misrepresentation; and engaging in conduct prejudicial to the administration of justice which adversely reflects on Respondent's fitness to practice law, in violation of Disciplinary Rules 7–102(A)(5) and (7) and 1–102(A)(1), (4), (5) and (6).

Upon examination of the record now before this Court, we now further find that at the time Respondent drafted, prepared and forwarded the above noted letter to the Richmond Police Department, he knew from his own personal knowledge that:

a) Jennifer Schoon did not arrive at her home, 10 Howard Place, approximately 9:00 to 9:30 P.M. Saturday, November 29th. He also knew that she did not stay at her residence on Howard Place until the next morning at around 8:30.

b) Jennifer Schoon did not discover the damage to her vehicle upon leaving her Howard Place residence the next morning at around 8:30.

c) Jennifer Schoon had not had the damage to her vehicle repaired at that time.

d) Jennifer Schoon had not instructed respondent to avoid undue publicity in the matter before that letter was sent.

By these acts, Respondent violated Disciplinary Rule 1–102(A)(4) in what he engaged in conduct involving deceit and misrepresentation and Disciplinary Rule 7–102(A)(5) in that he knowingly made a false statement of fact.

Under Count IV, the Respondent is charged, in general, with falsely testifying under oath before the Wayne Circuit Court Grand Jury that he never offered to pay Jennifer Schoon for the damage done to her automobile on November 30, 1980.

The Hearing Officer found that the Respondent never promised to "pay for" the damages and only stated that he would "take care of" such damages. Consequently, the Hearing Officer concluded that there was no violation of the *Code of Professional Responsibility*. There being no objection raised by the Disciplinary Commission, we now adopt and accept as our own the Hearing Officer's findings and conclusions under this Count.

Under Count VIII, the Respondent is charged with falsely testifying under oath before the Wayne County Grand Jury concerning the Report sent to the Richmond Police Department on or about December 15, 1980. Specifically, Respondent is charged with violating Disciplinary Rules 7–102(A)(4), (5), (7) and (8) of the *Code of Professional Responsibility* by knowingly using perjured or false testimony, knowingly making a false statement of law or fact, counselling or assisting a client in conduct known to be illegal or fraudulent and knowingly engaging in other illegal conduct or conduct contrary to a Disciplinary Rule. Respondent is further charged with violating Disciplinary Rules 1–102(A)(1), (4), (5) and (6), by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation and engaging in conduct prejudicial to the administration of justice which adversely reflects on his fitness to practice law.

Upon examination of the matters now before the court, we further find that on July 1 and 6, 1982, the Respondent, on at least ten occasions, testified under oath before the Wayne County Circuit Court Grand Jury that Jennifer Schoon instructed him exactly what to include in the report sent to the Richmond Police on or about December 15, 1980. Jennifer Schoon did not tell the Respondent what to include in the report and Respondent's testimony in this regard was knowingly false.

In view of the above findings, this Court now concludes that the Respondent engaged in professional misconduct as charged under Count VIII of the Complaint now before the Court.

The two remaining Counts of alleged misconduct are not related to the November, 1980 incident. Under Count VI, the Respondent is charged with the solicitation of a personal retainer in 1968. Specifically, Respondent is charged with violating Canons 6, 11 and 27 of the American Bar Association and his oath as an attorney.

This Court now finds that in April, 1968, the Respondent was an Indiana State Senator and arranged for the transfer of state disaster relief funds to two Richmond banks for the purpose of making low interest loans in the aftermath of a tragic explosion. At a meeting on April 8, 1968, with three officers of the Second National Bank, Respondent solicited a personal retainer fee of three hundred dollars. The bank officers refused to pay such fee.

In view of our findings under this Count, this Court now concludes that the Respondent violated Canon 27 of the American Bar Association Canons of Ethics and his oath as an attorney in that he solicited professional employment and a retainer fee.

Lastly, under Count VII, Respondent is charged with creating a "ghost employee" scheme while supervising the Wayne County License Branch. Specifically, Respondent is charged with violating his oath as an attorney, Canon 11 of the American Bar Association Canons of Ethics and Disciplinary Rules 1–102(A)(1), (4) and (6).

Upon examination of the record now before the Court, we find that Respondent served as Wayne County Republican Chairman from 1968 to 1972 and, as such, controlled the operation of the Wayne County License Branches, including Richmond Auto License Branch, No. 121. In October 1969, Respondent instructed License Branch personnel to deliver to him weekly

a check drawn on Richmond License Branch funds in the amount of approximately fifty dollars made payable to "Barbara Jean Adams". Barbara Jean Adams was a fictitious person. Respondent filed for a social security number for this person; all information on such application was false. Respondent opened a bank account and endorsed the payroll checks for Adams and deposited them in such account. Respondent filed income tax returns in the name of "Barbara Jean Adams".

Adams' name was on the payroll until October, 1970 and Adams received approximately three thousand dollars in salary. Throughout 1970 and until January 27, 1971, Respondent used the salary paid Adams for Respondent's personal benefit.

In view of the above noted findings under this Count, this Court now concludes that Respondent violated Disciplinary Rule 1–102(A)(4) in that he engaged in conduct involving dishonesty, deceit and misrepresentation and Disciplinary Rule 1–102(A)(6) in that he engaged in conduct which adversely reflects on his fitness to practice law.

It is now the duty of this Court to determine an appropriate sanction, understanding our responsibility to maintain the integrity of the Bar.

From an examination of the matters presented in this proceeding, it is abundantly clear that the Respondent has a history of deceit and misconduct reaching back a substantial number of years. Throughout this course of time, he has demonstrated a willingness to knowingly misrepresent facts when it appears to be in his best interests. With regard to the incidents occurring during the evening of November 29, 1980, Respondent misrepresented the underlying circumstances to the police and continued in such misrepresentation under oath before the Grand Jury. Through the creation of "Barbara Jean Adams", Respondent deceived the Social Security Administration, the bank, and the Internal Revenue Service. It is equally clear that all of this misrepresentation was intentional.

In the proceedings before the Hearing Officer, Respondent sought to explain the "Adams" matter through justifiable hypocrisy. Respondent stated that he did not want to receive funds from the License Branch while at the same time publically opposing such practice in the Legislature. In other words, Respondent argues that it was permissible to create this fictitious person and engage in factual misrepresentation and deceit to deceive the public. We view this to be an incredulous argument.

In view of the above considerations, this Court must now conclude that in order to protect the public from further acts of misconduct and in order to maintain the integrity of the Bar of this State, the strongest sanction available must be imposed. It is therefore ordered that, by reason of the misconduct found under this cause, that the Respondent be and he hereby is disbarred as an attorney in the State of Indiana.

Costs of this proceeding are assessed against the Respondent.

HUNTER, J., dissents with grave misgivings about the propriety of this action.