In the Matter of Robert L. SHEAFFER.

No. 584 S 172.

Supreme Court of Indiana.

Sept. 11, 1995.

Robert W. McNevin, Indianapolis, for respondent.

Donald Lundberg, Executive Secretary, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

**DISCIPLINARY ACTION**

PER CURIAM.

This disciplinary proceeding was initiated in 1984 by a *Verified Complaint for Disciplinary Action* charging the respondent with violating the *Code of Professional Responsibility for Attorneys at Law* in effect during the period of time in question here.[1] The charges emanated from respondent's actions during 1983. The procedural history of this case is lengthy. It is recited here in order to present the procedural framework within which the issues presented on review have arisen.

Upon the filing of the *Verified Complaint for Disciplinary Action,* this court appointed a hearing officer pursuant to *Admission and Discipline Rule 23.* That hearing officer heard the case and tendered his findings of fact. This court, after a *de novo* review, adopted the hearing officer's findings and concluded that the respondent had engaged in the charged misconduct. The respondent was suspended for two years, beginning January 16, 1989. This court's opinion is published in *Matter of Sheaffer* (1988), Ind., 531 N.E.2d 495.

In summary, that opinion stated that the respondent had represented Jimmy Dean Wilson on charges of Driving While Intoxicated and Possession of a Controlled Substance. A jury had found Wilson guilty of the Possession charge and had acquitted him of the Driving While Intoxicated charge. The charges had arisen out of a stop and arrest by Indiana State Police Trooper Michael Kolls (hereinafter "Kolls"). Kolls had testified at Wilson's trial that Wilson had been driving the car but had switched seats with another occupant of the car, Claudina Gaskins, (later married to Wilson) prior to

---

1. The respondent was charged with violating Disciplinary Rules 1–102(A)(1), (4), (5) and (6) and Disciplinary Rule 7–102(A)(6), which state:

    DR 1–102(A)(1)—A lawyer shall not violate a Disciplinary Rule;

    DR 1–102(A)(4)—A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

    DR 1–102(A)(5)—A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

    DR 1–102(A)(6)—A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

    DR 7–102(A)(6)—In his representation of a client, a lawyer shall not participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.

being stopped by Kolls. Wilson and Gaskins had testified that Claudina had been driving the car at all times. A third occupant of the car, Archie Anderson, had not testified at the trial.

Kolls believed that Wilson and Gaskins had committed perjury, and he initiated an investigation by interviewing the third occupant of the car, Archie Anderson. Thereafter, on September 12, 1983, Anderson met with the respondent to discuss the Wilson matter. Anderson was outfitted with a transmitter which recorded his conversation with the respondent. The conversation was transmitted and received, recorded and monitored by Officer Kolls and Sergeant Wilkinson of the Indiana State Police. A "TRACS 60"[2] tape recording of the conversation between the respondent and Anderson is one of the significantly incriminating pieces of evidence against the respondent in this disciplinary proceeding.

As a result of Koll's investigation, Wilson and Gaskins were charged with perjury. Both pleaded guilty to the charges. The respondent was indicted and tried for Obstruction of Justice and received a directed verdict.

The respondent did not contest the authenticity of the tape recording during the first hearing of this disciplinary case. During our review of the initial findings of fact which led to the issuance of the 1988 *per curiam* opinion, the crux of the respondent's argument centered on the discrepancies in the witnesses' testimonies concerning the route taken by Wilson, Gaskins and Anderson prior to their being stopped. At that time, the respondent contended the Commission had failed to prove, by clear and convincing evidence, that he knew the information he related to Anderson was in fact false. *Matter of Sheaffer* (1988), Ind., 531 N.E.2d 495, at 497.

After the issuance of the 1988 *per curiam* opinion in this case, the respondent filed a petition for rehearing and an "addendum" in which, for the first time, he asserted that the tape recording of his conversation with Anderson was not accurate and had been altered intentionally. This court referred the respondent's petition for rehearing to a second hearing officer who was to determine if rehearing should be granted. At the respondent's request, that hearing officer ordered the "TRACS 60" tape released from this court's files into the possession of one of the respondent's expert witnesses. That expert released the tape to another of respondent's experts, with the result that the respondent did not make the "TRACS 60" tape available at the hearing before the second hearing officer. The Commission did not offer any evidence.

That hearing officer tendered his report, finding that the expert's conclusion was that anomalies or "glitches" were present and that the tape had been edited, but it was unclear to what extent. The hearing officer recommended that the respondent be reinstated. For a reason not apparent on the record, the hearing officer's report was not served on the Commission.

As a result, this court, without the benefit of the Commission's input, issued on January 3, 1992, an *Order Granting Permission to Reconsider*, 583 N.E.2d 740. Therein, this court returned the case to prehearing status, vacated the suspension and reinstated the respondent. The Commission was given sixty (60) days to indicate if they intended to proceed with a rehearing before another hearing officer.

In response, the Commission moved to revoke the reinstatement and for an order to compel the respondent to produce the "TRACS 60" tape for the Commission's examination. This court ordered the respondent to produce the tape and, after his failure to do so, ordered him to appear and show cause why he should not be held in contempt. Prior to said hearing, the respondent did produce the tape, and the Commission proceeded with a rehearing. This court appointed another hearing officer whose report on findings, conclusions and recommendation is now before us for final review.

2. "TRACS 60" is the brand name of a standard cassette format tape which was identified and admitted as the original recording of the September 12, 1983, conversation between Anderson and the respondent.

The respondent petitioned for review, this time contending that: (1) his motion to dismiss based on the theories of *res judicata* and collateral estoppel was erroneously denied; (2) Trooper Kolls was impeached as a witness; (3) the respondent's motion to suppress the admission of the "TRACS 60" tape should not have been denied; and (4) it was prejudicial to admit said tape.

■ This review is a *de novo* examination of all matters presented. It includes a review not only of the hearing officer's report but also of the entire record in the case. The hearing officer's findings receive emphasis due to his or her unique opportunity for direct observation of witnesses, but this court remains the ultimate fact-finder and arbiter of misconduct and sanction. *Matter of Geisler* (1993), Ind., 614 N.E.2d 939; *Matter of Smith* (1991), Ind., 579 N.E.2d 450; *Matter of Gemmer* (1991), Ind., 566 N.E.2d 528. The respondent's challenges will be addressed within the context of this review process.

■ The respondent's grounds for seeking dismissal were considered by this court and rejected by our *Order Denying Motion to Dismiss,* issued September 15, 1993. His argument, lacking any citation to legal authority, refers intermittently to the theories of *res judicata,* collateral estoppel and to protections against double jeopardy under the *Fifth Amendment to the Constitution of the United States.* He contends that he has been tried three times for the same offense, once on criminal charges, and twice before a hearing officer. The argument is untenable. A disciplinary action is not a criminal proceeding; the discipline of a member of the Bar of this State is independently determined from any other proceeding, even if the alleged professional impropriety involves criminal conduct. *Matter of Hampton* (1989), Ind., 533 N.E.2d 122; *Matter of McDaniel* (1984), Ind., 470 N.E.2d 1327. Constitutional protections that are specific to criminal proceedings do not necessarily apply in the lawyer discipline context. *Matter of McDaniel, supra.* For principles of *res judicata* to apply, there must have been a final

judgment on the merits and that judgment must have been entered by a court of competent jurisdiction. *Schmal v. Ernst* (1979), 180 Ind.App. 137, 387 N.E.2d 96. The respondent sought rehearing of the only decision which could have stood as the final judgment of this court, the only court of competent jurisdiction in attorney discipline matters. *Art. 7, S 4, Constitution of Indiana.* He cannot claim *res judicata* now that the hearing officer's findings, upon rehearing, are adverse to him.

■ The respondent contends that the hearing officer committed prejudicial error in his ruling on the impeachment of Officer Kolls, a Commission witness. In an unrelated case, Kolls had pleaded guilty to the offense of Official Misconduct. Because this designation of the offense did not reveal on its face whether or not it is an impeachable offense pursuant to Ind.Evidence R. 609(a)(2), Kolls was asked on cross-examination as to the specific charge against him. Kolls admitted that he had pleaded guilty to a charge which accused him of giving false testimony regarding his sexual relationship with another party. The respondent insists that he should have been allowed to introduce into evidence two exhibits, the above mentioned charge and a transcript of Kolls' guilty plea hearing. Kolls' admission to the underlying facts of the charge of Official Misconduct provided full and accurate information as to the nature of the offense. The tendered exhibits would have been cumulative evidence at best. In that this is a *de novo* review, the challenge to the credibility of this witness is resolved by this court within the broader review of the admission of and weight to be given to the "TRACS 60" tape.

The respondent next complains that the hearing officer erroneously failed to grant his motion to suppress the admission of the "TRACS 60" tape in this disciplinary proceeding because the respondent was not advised of his *Miranda*[3] rights. The respondent cites no legal authority for his claim, as there is none. Indeed, he acknowledges that *Miranda* applies only to "in custody" criminal interrogations.

---

**3.** *Miranda v. Arizona* (1966), 384 U.S. 436, 86    S.Ct. 1602, 16 L.Ed.2d 694.

■ The respondent also argues that the "TRACS 60" tape should not have been admitted into evidence because it fails to meet the foundational requirements set out in *Bryan v. State* (1983), Ind., 450 N.E.2d 53.[4] He contends that the "TRACS 60" tape is not the original tape recording, that it has been altered and, therefore, that it is not authentic.

The hearing officer found that the "TRACS 60" cassette tape contained the original recording of the conversation between Sheaffer and Anderson on September 12, 1983. Kolls testified that the "TRACS 60" tape was the original tape cassette that was inserted into the recording device. He knew this because he had marked it as the original and initialed and dated it. Wilkinson and Kolls had monitored the entire conversation while it was being recorded. They subsequently listened to the recording and each of them affirmed that the recording accurately reflects the conversation. The other participant to the conversation, Anderson, also listened to the tape recording and verified that the recording accurately represents the words spoken between him and the respondent. No evidence of any masking, filtering, alteration or dubbing was found by the experts hired to examine the "TRACS 60" audio cassette tape. Further, these experts found no indication of physical splicing or the addition of background noise; rather, the ambient noise identified seemed typical for a room conversation. The hearing officer also found that a momentary squeal or squawk toward the end of the recorded conversation was caused when the transmitter button was inadvertently pressed but that the squawk did not destroy the sentence being recorded at that time. The respondent challenges these findings, insisting that somehow, someone altered large portions of the tape.

■ Although this review is *de novo*, the hearing officer's assessment of the evidence

and his judgment in reconciling conflicting evidence and testimony carries great weight. *Matter of Merrill L. Smith and Gregory B. Smith* (1991), Ind., 572 N.E.2d 1280; *Matter of Kern* (1990), Ind., 555 N.E.2d 479. Here, he heard all the witnesses, weighed the evidence and testimony and concluded that the "TRACS 60" tape accurately reflects that conversation between Anderson and the respondent. We find that there is clear and convincing evidence to support these findings and conclusion that the "TRACS 60" tape accurately reflected the conversation in question.

The respondent next argues that the tape should not have been admitted because it fails to meet the second foundational requirement, found in *Bryan, supra,* that the testimony elicited is freely and voluntarily given without any duress. The respondent argues that Anderson was "under duress" when he agreed to have the conversation with the respondent taped. Anderson had been accused by a female victim of a violent attack upon her. During his first meeting with Kolls, Anderson had asked Kolls to check into these accusations. These accusations did not result in charges against Anderson. Anderson stated that he was made no promises of favorable treatment, that he was not subject to any threats, and that the decision to have the conversation taped was his own free choice. This evidence clearly supports the hearing officer's finding that Anderson agreed to wear the transmitter without promises, favors or threats.

■ Although we concur with the hearing officer's finding that there is no evidence of any duress upon Anderson, it is important to note that the respondent misconstrues the applicability of the second foundational requirement of the *Bryan* case. Freedom from duress in that case relates to the free-

---

4. Citing *Lamar v. State*, (1972) 258 Ind. 504, 282 N.E.2d 795, 800, the *Bryan* Court laid out five foundational requirements for admission of a tape recording into evidence:

"(1) That it is authentic and correct;

(2) That the testimony elicited was freely and voluntarily made, without any kind of duress;

(3) That all required warnings were given and all necessary acknowledgments and waivers were knowingly and intelligently given;

(4) That it does not contain matter otherwise not admissible into evidence;

(5) That it is of such clarity as to be intelligible and enlightening to the jury."

dom of the person against whom the recorded statement is being offered.[5] In this case, that person is the respondent. His participation in the conversation was clearly voluntary and free of duress or coercion. Accordingly, we find that the "TRACS 60" tape was properly admitted and considered by the hearing officer.

▋ We also approve the hearing officer's findings relative to the events leading to the taping of the conversation. They are as follows: On September 10, 1983, after the acquittal of Wilson and Gaskins, Kolls drove to Anderson's home in Fairland, Indiana, across the street from Jimmy Wilson's house. Kolls obtained a recorded statement from Anderson which corroborated Kolls' version of the facts. Wilson observed the state police parked in front of Anderson's home, called the respondent and asked him to speak with Anderson. The respondent refused to make the contact, but indicated that Anderson could give him a call.

When Wilson asked Anderson the purpose of Kolls' visit, Anderson was candid and informed Wilson that he had given Kolls a recorded statement. Wilson asked Anderson to give the respondent a call. Anderson told the respondent of this conversation with Kolls and that he expected Kolls to contact him again. The respondent then invited Anderson to come to his office. Anderson contacted Kolls and informed him of his planned meeting with the respondent. Kolls asked if he would be willing to wear a "wire", and Anderson agreed.

During his conversation with Anderson, the respondent told Anderson to recant the statement he had given Kolls and instead, to say that he had been confused, to provide Kolls with misleading and confusing information and not to reveal the meeting between the respondent and Anderson.[6]

The foregoing findings convince us that the respondent participated in the creation and preservation of evidence when it was obvious that the evidence was false, in violation of *Disciplinary Rule 7–102(A)(6)*. He engaged in conduct which involves dishonesty, deceit and misrepresentation, in violation of *Disciplinary Rule 1–102(A)(4)*. Such conduct is prejudicial to the administration of justice and adversely reflects on the respondent's fitness to practice law, in violation of *Disciplinary Rule 1–102(A)(5) and (6)*.

This court originally suspended the respondent for a period of not less than two (2) years, beginning January 16, 1989. Upon rehearing, we find that the two-year period of suspension remains an appropriate disciplinary sanction under the circumstances of this case and should be reimposed. Because said period of suspension has already been served the respondent is eligible immediately to seek reinstatement pursuant to *Admission and Discipline Rule 23, Section 4*. It is, therefore, ordered that the order of suspension is restored, and the respondent is hereby suspended from the practice of law pending his reinstatement pursuant to *Admission and Discipline Rule 23, Section 4*.

Costs of this proceeding are assessed against the respondent.

---

**5.** See *Bryan v. State, supra,* at 59. "As to requirements (2) and (3), it is clear these apply only when the tape recording is of a statement by the accused made during a custodial interrogation such as the requirements of *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 and its progeny."

**6.** The following are excerpts of *Commission's Exhibit A,* a transcription of the conversation between the respondent and Anderson:

"Now, Koll (sic) is trying to get Jimmy in trouble now and Jimmy is worried about it. Now that's between us right here, and don't you ever let this get out, you understand?"
"Don't you even tell Kolls you have even talked to me."

"Alright, now let's go over it. You could, if he asks you whether you've talked to Jimmy say 'no, you haven't seen Jimmy', you understand?"
"Okay, don't even even(sic) tell 'em you've discussed it with Jimmy. Tell them that he didn't know where you were and you suppose that's why you weren't called as a witness. You understand what I am saying?"
"Say she was the driver."
"Now do you understand where you're at, what you're gonna to say?"
"Tell him that when he come (sic) out there and talked to you, he caught you cold but you've been thinking about it since then. Okay?"

DeBRULER, J., concurs as to findings of misconduct and sanction, but would not require a petition for reinstatement.