**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PHILIP R. SKODINSKI**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RODNEY PAUL SNIADECKI, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1401-CR-16 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Larry L. Ambler, Magistrate
Cause No. 71C01-1205-FC-5

October 2, 2014

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Chief among the personal traits required of attorneys are honesty and trustworthiness. These traits are explicitly recognized in our Rules of Professional Conduct as those most relevant to the practice of law,[1] and conduct involving dishonesty, fraud, deceit, or misrepresentation will subject an attorney to discipline even if it does not rise to the level of a crime. Unfortunately, this case involves not only a failure to live up to the heightened standard of conduct our State requires of those privileged to practice law, but also a failure to observe the law generally.

Rodney Sniadecki appeals his conviction of three counts of Forgery,[2] a class C felony. Finding that (1) Sniadecki waived his challenge to the introduction of testimony by failing to make a timely and specific objection at trial, (2) he cannot appeal the trial court's ruling on a motion in limine, (3) his prior attorney disciplinary proceeding did not bar criminal prosecution, and (4) the evidence was sufficient to sustain his conviction, we affirm.

## FACTS

Sniadecki has practiced law as a solo practitioner in St. Joseph County for over twenty years. In 2007, he was disciplined by our Supreme Court for multiple violations of the Indiana Rules of Professional Conduct. In re Sniadecki, 875 N.E.2d 22 (Ind.

---

[1] Ind. Professional Conduct Rule 8.4.

[2] Ind. Code § 35-43-5-2(b). As of July 1, 2014, the crime of forgery is codified at Indiana Code section 35-43-5-2(d). The current language is identical to that of the previous version.

2007). As a result of these violations, Sniadecki was suspended from the practice of law for six months.

During the period of his suspension, Sniadecki asked Michael Wandling, an attorney working in a different office in the same building as Sniadecki, if Wandling could assist Sniadecki's clients while Sniadecki was suspended. Wandling agreed and began representing Sniadecki's clients and receiving weekly paychecks from Sniadecki. Sniadecki also requested the same help from Angela Russo, an attorney who Sniadecki had known for years, and she agreed.

Sniadecki maintained close contact with his office throughout his suspension, communicating frequently with Sherry White, who had been his legal assistant for over twenty years. Shortly after Wandling had begun working with the office, Sniadecki directed White to file documents in a criminal case in Wandling's name without his knowledge. Sniadecki also directed White to file documents in Russo's name in a child custody case. Russo, who was not informed of this filing, learned of it when she came across it during a search of the court's electronic filing system. Russo promptly spoke with White and informed the court of the forged filing.

Around this same time, Sniadecki also asked White to assist him in obtaining a loan from a mortgage company. When the mortgage company would call Sniadecki's office to ask for documents, White would call Sniadecki and tell him what had been requested. Sniadecki would then instruct White to create fraudulent documents, such as corporate tax returns.

As a result of these actions, Sniadecki was disbarred by our Supreme Court in 2010, In re Sniadecki, 924 N.E.2d 109 (Ind. 2010), and charged with three counts of class C felony forgery in 2012. A jury found him guilty as charged on September 25, 2013, and the trial court sentenced him on December 11, 2013. Sniadecki now appeals.

## DISCUSSION AND DECISION

### I. Sherry White's Testimony

Sniadecki first argues that the trial court erred in admitting testimony elicited by the State during its direct examination of White. White had previously testified during Sniadecki's disbarment proceedings. The trial court had determined that discussion of the disbarment proceedings should be kept from the jury because of its prejudicial nature. Tr. 14-18. However, the trial court did clarify that testimony from these hearings could be referenced in the event that a witness made inconsistent statements. Tr. p. 17. During the State's direct examination of White, she gave answers that were inconsistent with her testimony during the disbarment proceedings. Tr. p. 347. The State then read portions of her disbarment testimony and asked her if that was, indeed, what she had said previously. Sniadecki argues that this was an improper, substantive use of White's prior testimony.

We need not pass judgment on the merits of this point because Sniadecki failed to make a timely objection. "When a defendant fails to properly bring an objection to the trial court's attention so that the court may rule on it at the appropriate time, he is deemed to have waived that possible error." Cleary v. State, 663 N.E.2d 779, 782 (Ind. 1996). Sniadecki takes issue with this testimony because he believes it was offered as

4

substantive evidence rather than for impeachment purposes. However, the trial court was never given the opportunity to instruct the jury on how to view this testimony because Sniadecki failed to object. While there is a narrow exception to the waiver rule in cases of fundamental error, Wiggins v. State, 727 N.E.2d 1, 10 (Ind. Ct. App. 2000), Sniadecki does not argue that the admission of this testimony amounted to fundamental error. We will therefore not revisit this issue on appeal.

Sniadecki contends that he objected to the introduction of White's testimony on the basis of Indiana Evidence Rule 612, arguing that the State improperly refreshed White's recollection with her former testimony. We stress that, in addition to the requirement that objections be made timely, objections must also be "sufficiently specific to alert the trial judge fully to the legal issue." Moore v. State, 669 N.E.2d 733, 742 (Ind. 1996). When a party makes a mere general objection, or objects on grounds different from those raised on appeal, he has failed to preserve an issue for appellate review. Reed v. Bethel, 2 N.E.3d 98, 107 (Ind. Ct. App. 2014). Such is the case here. It is difficult to decipher the basis for Sniadecki's objection at trial as the relevant sidebar discussion that occurred takes up over fifty pages in the trial record. Tr. p. 370-423. Not once did Sniadecki express concern that it was improper to refresh White's recollection with her former testimony. Sniadecki's argument at trial, to the extent that it was coherent, seemed to relate to his concern over the relevance and the prejudicial effect of the prior

5

testimony.[3] Sniadecki's objection came too late and in too general of a form to properly alert the trial court to any error and we will not allow Sniadecki to restate his objection in a more cogent manner on appeal.

Waiver notwithstanding, the trial court did not err in allowing the State to impeach White or refresh her recollection with her former testimony. This Court has noted that "[t]he trial court may permit a witness to refresh his memory of facts by referring to a written memorandum" and "[i]f an inspection of the writing recalls to the mind of the witness facts which he had previously known, but which had, at the moment, escaped his recollection, he can testify to such facts being within his own personal knowledge." Carter v. Knox Cnty. Office of Family and Children, 761 N.E.2d 431, 439 (Ind. Ct. App. 2001). In this case, Sniadecki takes issue with White's response to the State's question regarding whether she had ever expressed concern to Sniadecki about her involvement in the fraud. She stated: "I remember saying, because I read it and it reminded me that I had said it, that I would go to jail . . . and [Sniadecki] would walk away free and clear because . . . his name wasn't on anything." Tr. p. 425-26. Here, because White has restated her prior testimony as a result of having recalled it, it is this current, in-court

_____

[3] In summing up his objection at trial, Sniadecki stated to the trial judge: "It [White's prior testimony] is highly prejudicial; it's not relevant; it's misleading, overbroad, and it calls for a conclusion of law." The trial court overruled Sniadecki's objection on these bases. Tr. p. 392.

testimony that is the substantive evidence being admitted, not her prior testimony.[4]  As such, Sniadecki's argument is unavailing.

## II.  Trial Court's Ruling on Motion in Limine

Sniadecki next argues that the trial court erred when it granted the State's motion in limine prohibiting Sniadecki from questioning White about certain matters at trial.  We need not reach the merits of this claim because Sniadecki has again failed to properly preserve this issue.  "Rulings on motions in limine are not final decisions and, therefore, do not preserve errors for appeal."  Swaynie v. State, 762 N.E.2d 112, 113 (Ind. 2002).  Consequently, this issue is not available for review.

## III.  Double Jeopardy

Sniadecki next claims that the criminal charges against him should be dismissed on double jeopardy grounds, as he had already been punished for these offenses when he was disbarred by our Supreme Court.  The Double Jeopardy Clause of the Fifth Amendment to the United State Constitution[5] "prohibits the State from placing a defendant in jeopardy twice for the same offense."  Jackson v. State, 925 N.E.2d 369, 372 (Ind. 2010).  However, "'[t]he Clause protects only against the imposition of multiple criminal punishments for the same offense.'"  Moala v. State, 969 N.E.2d 1061, 1066

---

[4] Sniadecki also argues that "there is no way to determine what Sherry White was referring to when she made that remark."  Appellant's Am. Br. p. 2.  Sniadecki contends that the jury could have thought she was "referring to some other document or event that was not even at issue in the trial[.]"  Id.  The trial court found that it was perfectly clear what she was referring to and we agree.

[5] Sniadecki does not state whether his argument is grounded in the U.S. Constitution or Article 1, Section 14 of the Indiana State Constitution. Because he relies primarily on a United States Supreme Court case interpreting the U.S. Constitution, we infer that he argues under the U.S. Constitution.

(Ind. Ct. App. 2012) (quoting Hudson v. United States, 522 U.S. 93, 93 (1997)(emphasis original)). Our Supreme Court has recognized that an attorney disciplinary proceeding is not a criminal proceeding, and, therefore, any punishment resulting from such a proceeding is not a criminal punishment. Matter of Sheaffer, 655 N.E.2d 1214, 1217 (Ind. 1995). Therefore, Sniadecki has not been twice placed in jeopardy for purposes of the Double Jeopardy Clause.

## IV. Sufficiency of the Evidence

Finally, Sniadecki claims that the evidence was insufficient to convict him on all three forgery counts. When reviewing a claim of insufficient evidence, we consider only the evidence most favorable to the verdict and any reasonable inferences drawn therefrom. Baker v. State, 968 N.E.2d 227, 229 (Ind. 2012). We will uphold the verdict if a reasonable finder of fact could determine from the evidence that the defendant was guilty beyond a reasonable doubt. Id.

Indiana Code section 35-43-5-2(d)(1) states that a person commits forgery when he, "with intent to defraud, makes [or] utters . . . a written instrument in such a manner that it purports to have been made by another person." Here, because White was responsible for making the documents at issue, the State sought to prove that Sniadecki was an accomplice—a person who knowingly or intentionally aids, induces, or causes another person to commit an offense—and thus guilty of forgery. Ind. Code § 35-41-2-4.

Sniadecki first claims that there was no evidence in the record from which the jury could find that Sniadecki instructed White to sign Wandling's name on documents in a

8

criminal case that Sniadecki was handling.  The jury listened to White's testimony regarding Sniadecki's statements to her in relation to these documents.  The relevant portion is as follows:

> Q: Okay, who gave you the information to put in the documents?
> A: Rod [Sniadecki] gave me the information to put in the documents.
> Q: Did Rod tell you to sign Michael Wandling's name?
> A: I doubt that he came right out and said that.
> Q: Ms. White, can you review page "190," plus the bottom of page "189," the top of page "190"? [White's disbarment testimony]
> A: Okay.
> Q: Having reviewed that, do you recall that Rod Sniadecki told you to put Michael Wandling's name?
> A: No. What I remember him saying was, "enter the Appearance," but I don't recall him ever saying, "sign his name."

Tr. p. 349.

Sniadecki argues that because White qualified her answer to the final question and did not specifically say that Sniadecki told her to "sign his name," there is no evidence from which the jury could conclude that Sniadecki caused White to forge the documents. We disagree.  A reasonable jury could infer from White's statement, "I doubt that he came right out and said that," that Sniadecki had said something that effectively instructed White to sign the documents.  White then clarified that she remembered Sniadecki instructing her to "enter the Appearance."  As the appearance could not be properly entered without Wandling's signature, it was reasonable for the jury to infer that Sniadecki was instructing White to sign the documents in Wandling's name.

Sniadecki makes a similar claim in regard to the evidence concerning forgery of Russo's signature.  Here, White testified that she recalled Sniadecki instructing her to

enter Russo's appearance. Sniadecki argues that "it was common practice in the Sniadecki Law Office for Sherry White to enter his appearance on cases . . ." Appellant's Br. p. 12. The problem is that it also appears that it was common practice for Sniadecki to instruct White to enter other attorneys' appearances, which requires forging their signatures. White testified that Sniadecki had instructed her to enter Russo's appearance without Russo's knowledge. Tr. p. 355-56. Once again, a reasonable jury could infer from White's testimony that Sniadecki instructed her to forge Russo's signature.

Finally, Sniadecki makes the same argument in regard to the forged loan documents. The relevant portion of White's testimony is as follows:

> Q: Ms. White, at some point during this process did you begin creating documentation?
> A: Yes.
> Q: How did that occur?
> A: Well, obviously, there was no documentation to support this, so it had to be created.
> Q: Okay. Did you have discussions with [Sniadecki] about creating documentation?
> A: Specifically, I don't remember if it was specific, just that they [the mortgage company] needed something; and how hard would it be to do it? So I guess, yes.
> Q: Okay. What do you remember of that conversation? Do you remember what specific documents that was about?
> A: Bank statements and tax returns.
> Q: Okay. Did you tell Rod at some point that Stephen Riner and the loan people needed corporate, personal tax returns?
> A: I don't remember the personal, but I remember the corporate. Yes.
> Q: Okay. And what was his response?
> . . .
> A: His response was that "This is important, and this has to get done, and do what you have to do."

Tr. p. 361-62. White also testified that she later complained to Sniadecki about having to submit these documents and expressed her concern over having been involved in criminal activity. Sniadecki seemed unmoved by her concerns. Tr. p. 424-26.

With respect to the mortgage documents, White testified that she would call Sniadecki to tell him what the mortgage company wanted. White further testified that Sniadecki then stressed the importance of obtaining the loan and asked how hard it would be to find a way to give the mortgage company what it was asking for. White then testified that Sniadecki instructed her to "do what [she] had to do." Tr. p. 362. The jury could have reasonably inferred from this testimony that White had been instructed to forge documents. Thus, the jury could have reasonably inferred from the evidence that Sniadecki was an accomplice to all three counts of forgery beyond a reasonable doubt.[6]

The judgment of the trial court is affirmed.

KIRSCH, J., and ROBB, J., concur.

---

[6] In his reply brief, Sniadecki argues that there was insufficient evidence of his "intent to defraud" as required by the forgery statute. I.C. 35-43-5-2(d). "Appellants are not permitted to present new arguments in their reply briefs, and any argument an appellant fails to raise in his initial brief is waived for appeal." Kelly v. Levandoski, 825 N.E.2d 850, 858 n. 2 (Ind. Ct. App. 2005) (citing Ind. Appellate Rule 46(C)). As Sniadecki failed to make this argument in his initial brief, we will not consider it.